FLEER CORPORATION, a Delaware
Corporation, Defendant
Below, Appellant,

v.

TOPPS CHEWING GUM, INC., a New
York corporation, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Dec. 17, 1987.
Decided: April 6, 1988.

R. Franklin Balotti, Joseph J. Bodnar, and John A. Parkins, Jr., of Richards, Layton & Finger, Wilmington, Frederic L. Ballard (argued), and Tyson W. Coughlin, of Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for appellant.

Edward B. Maxwell, 2nd, of Young, Conaway, Stargatt & Taylor, Wilmington, James D. Crawford (argued) and Sharon Weinman, of Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

CHRISTIE, Chief Justice:

Appellant, Fleer Corporation (Fleer), and appellee, Topps Chewing Gum, Inc. (Topps), have long been engaged in the manufacture, distribution, and sale of chewing gum, candy novelties, and trading cards. For more than ten years, Topps' exclusive rights to produce and market baseball trading cards have been the subject of extensive litigation between Fleer and Topps.

Over a period of many years, Topps acquired its exclusive rights in respect to the manufacture and sale of baseball cards by entering into contracts with virtually every major league baseball player while the player was still in the minor leagues. The individual contracts granted Topps the exclusive right to manufacture and distribute baseball trading cards using the players' names, pictures, and signatures. Topps also entered into an exclusive licensing agreement with the Major League Baseball Players Association (Players Association) to market the collective use of the players' names, pictures, and signatures.

In 1975, Fleer filed suit in the United States District Court for the Eastern District of Pennsylvania alleging violations of the Federal Sherman Antitrust Act, 15 U.S.C. §§ 1–2, by Topps and the Players Association. In 1980, the U.S. District Court found that certain provisions of the Sherman Antitrust Act had been violated by Topps and the Players Association. *Fleer Corp. v. Topps Chewing Gum, Inc.*, E.D. Pa., 501 F.Supp. 485 (1980). The court permanently enjoined Topps from enforcing the exclusive rights granted to it in the players' contracts and prohibited Topps from entering into future exclusive contracts with any baseball players. The court ordered Topps to assign to the Players Association nonexclusive rights to sell or license the names, pictures, and signatures of all the baseball players under contract to Topps. The Players Association was then ordered to grant a nonexclusive license to Fleer for the manufacture and sale of baseball cards, provided that Fleer met certain conditions. Both Topps and the Players Association complied with the orders and Fleer was granted a nonexclusive license by the Players Association.

Topps appealed the order of the District Court to the United States Court of Appeals for the Third Circuit and sought a stay of the orders pending appeal. Topps' motion for a stay was denied by the District Court and that ruling was affirmed by the Court of Appeals. Thus, while the appeal was pending, Fleer manufactured and marketed baseball cards under its own trademark.

In 1981, the Court of Appeals reversed the judgment of the District Court. The case was remanded to the District Court with instructions to enter a judgment in favor of Topps and the Players Association. *Fleer Corp. v. Topps Chewing Gum, Inc.*, 3rd Cir., 658 F.2d 139 (1981), *cert. denied*, 455 U.S. 1019, 102 S.Ct. 1715, 72 L.Ed.2d 137 (1982).

After the District Court's judgment was reversed, the Players Association terminated Fleer's license and Topps' exclusive rights to manufacture and market baseball cards according to the terms of its contracts and licenses were restored. Fleer then ceased its baseball card operations.

In 1982, Topps brought an action against Fleer in the Court of Chancery seeking an accounting of Fleer's profits generated by the sale of baseball cards during the time the District Court's orders were in effect. Fleer filed a motion for summary judgment and argued that, as a matter of law, Topps was not entitled to recover any of Fleer's profits from its sale of baseball cards because those profits were earned under the protection of a court order and not as the result of any illegal infringement of Topps' exclusive contract or licensing rights.

The standard for summary judgment has been stated as, "if the pleadings and other proofs, if any, show that there is no genu-

ine issue as to any material fact and that the moving party is entitled to judgment, summary judgment will be rendered." *Nash v. Connell,* Del.Ch., 99 A.2d 242, 243 (1953); *see also* Court of Chancery Rule 56. In this case, the Court of Chancery denied Fleer's motion for summary judgment on the basis that Fleer had "presented no credible evidence entitling it to summary judgment in its favor." The court further stated that "Topps has a claim for restitution in the amount of the net profits received by Fleer arising out of Fleer's use of Topps' previously exclusive license agreements, even if Fleer's use was pursuant to a subsequently reversed court decree."

In its appeal to this Court, Fleer contends that the Court of Chancery erred in denying its motion for summary judgment. Fleer asserts the following arguments in support of its appeal:

    (I) Fleer's profits were earned under a court-mandated license and therefore do not constitute unjust enrichment;

    (II) While restitution is owed to Topps, Fleer's profits are not an appropriate means or measure of the restitution;

    (III) Fleer's profits were not a windfall to Fleer and, therefore, Fleer should not legally be deprived of what it earned.

## I—UNJUST ENRICHMENT

Fleer's argument that its profits do not constitute unjust enrichment because Fleer manufactured and marketed baseball cards under the protection of a later-reversed court order, is unpersuasive in the light of considerable authority to the contrary. A judicial decision, subsequently reversed does not offer the protection Fleer seeks:

A person who has conferred a benefit upon another in compliance with a judgment or whose property has been taken thereunder, is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final; if the judgment is modified, there is a right to restitution of the excess.

*Restatement of Restitution* § 74 (1937); *see also* 5 Am.Jur.2d, *Appeal and Error* § 997 and § 1003 (1962); *Atlantic Coast Line R. Co. v. State of Florida,* 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935), *reh'g. denied* 295 U.S. 769, 55 S.Ct. 918, 79 L.Ed. 1710 (1935); *Middlewest Motor Freight Bureau v. United States,* 8th Cir., 433 F.2d 212 (1970), *cert. denied,* 402 U.S. 999, 91 S.Ct. 2169, 29 L.Ed.2d 165 (1971).

Before the court may properly order restitution, it must find that the defendant was unjustly enriched [1] at the expense of the plaintiff. Unjust enrichment is defined as "the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." 66 Am.Jur.2d, *Restitution and Implied Contracts* § 3, p. 945 (1973). In this case, the Court of Chancery determined that "it would be inequitable to permit Fleer to profit from its use of Topps' exclusive license in light of the longstanding theory of unjust enrichment."

The rights arising out of contracts have long been recognized as property rights. *Lynch v. U.S.,* 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434 (1934); *see also* 63A Am.Jur. 2d *Property* § 11 (1984); 73 C.J.S. *Property* § 11 (1983). In the present case, Topps had labored for many years to obtain the exclusive right to market baseball trading cards. The rights contained in Topps' contracts and licensing agreements clearly constituted property owned by Topps.

An owner of property is entitled to the free exercise of a number of incidental

---

1. Restitution may also be ordered on the theory of implied contract as noted by this Court during oral argument. *See Western Natural Gas Co. v. Cities Serv. Gas Co.,* Del.Supr., 223 A.2d 379 (1966), *reh'g denied,* (Nov. 1, 1966) *cert. denied,* 386 U.S. 964, 87 S.Ct. 1030, 18 L.Ed.2d 112 (1967); *Western Natural Gas Co. v. Cities Serv. Gas Co.,* Del.Supr., 201 A.2d 164 (1964) *cert. denied,* 379 U.S. 905, 85 S.Ct. 189, 13 L.Ed. 2d 177 (1964); *Helmerich & Payne v. Colorado Interstate Gas Co.,* Del.Supr., 187 A.2d 67 (1962); *Columbian Fuel Corp. v. Superior Court,* Del. Supr., 158 A.2d 478 (1960) *cert. dismissed,* 364 U.S. 929, 81 S.Ct. 356, 5 L.Ed.2d 363 (1960).

rights in the property including possession and control, use and enjoyment, products and profits generated through its use, and the sale or transfer of the property. *See Bird v. Wilmington Soc. of Fine Arts,* Del.Supr., 43 A.2d 476 (1945); 63A Am.Jur. 2d *Property* §§ 1–3, 31–35 (1984); 73 C.J.S. *Property* § 27 (1983). As the owner of certain rights arising out of its contracts and licensing agreements, Topps was entitled to exercise these incidental rights in its property.

■ Topps was precluded from the full exercise and enjoyment of its rights by the District Court's judgment enjoining Topps from enforcing its exclusive contract and license rights and by Fleer's actions while that judgment was on appeal. Restitution has been recognized as a legitimate remedy when a court finds that a wrongfully issued injunction allowed the defendant to be unjustly enriched. *Atlantic Coast Line R. Co. v. State of Florida,* 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935), *reh'g. denied,* 295 U.S. 769, 55 S.Ct. 918, 79 L.Ed. 1710 (1935); 66 Am.Jur.2d, *Restitution and Implied Contracts,* § 11 (1973).

Throughout this litigation, Fleer has not been a disinterested third party but rather an active plaintiff who sought to attain and share in Topps' property rights. To achieve this goal, Fleer filed and successfully pursued an antitrust suit against Topps and the Players Association. Because of the injunction issued by the District Court, Fleer was able to legally appropriate Topps' property rights and market baseball trading cards, an action which would have clearly infringed on Topps' exclusive rights except for the District Court's order. However, Fleer's activity during the course of the litigation has not risen to the level of wrongdoing, and therefore Fleer may not properly be characterized as a wrongdoer or misuser.

## II—RESTITUTION

In order to obtain restitution, Topps must show not only that Fleer was unjustly enriched but also that Fleer secured a benefit and that it would be unconscionable to allow Fleer to retain that benefit. The

remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer. Restitution serves to "deprive the defendant of benefits that in equity and good conscience he ought not to keep, even though he may have received those benefits honestly in the first instance, and even though the plaintiff may have suffered no demonstrable losses." *Mass Transit Admin. v. Granite Constr.,* 57 Md.App. 766, 471 A.2d 1121, 1125 (1984) (quoting D. Dobbs, *Handbook on the Law of Remedies* § 41 (1973)); *see also* 66 Am.Jur.2d, *Restitution and Implied Contracts,* § 4 (1973).

Fleer recognized in its brief the general rule that a person who receives a benefit under a later reversed judgment must make restitution of money or property received under it. 5 Am.Jur.2d *Appeal and Error* § 997 (1962); *see also,* 66 Am.Jur.2d, *Restitution and Implied Contracts* § 11 (1973). However, Fleer argues that its profits were not the direct product of Topps' property rights but, rather, were the product of Fleer's capital investments, distribution network, and sales efforts. Fleer maintains that Topps was restored to its original position when Fleer terminated its baseball card operations, and therefore, Fleer does not owe additional restitution to Topps in the amount of its profits. Fleer cites no cases for this proposition, and we find this argument unpersuasive.

## III—PROFITS

■ Restitution may require not only the restoration of the property to its rightful owner but also compensation or reimbursement for the benefits enjoyed by the defendant through the use or possession of plaintiff's property regardless of whether or not the defendant is classified as a wrongdoer. 66 Am.Jur.2d *Restitution and Implied Contracts* § 1 and § 4 (1973). An accounting for profits is a means of measuring the benefits bestowed on an unjustly enriched defendant. Accordingly, an unjustly enriched defendant may be ordered to turn over to the plaintiff the profits earned through the use or possession of the plaintiff's property. *See Aye v. Fix,*

Mont.Supr., 626 P.2d 1259 (1981); *Mann v. Thompson*, Fla.Ct.App., 118 So.2d 112 (1960); *Lytle v. Payette–Oregon Slope Irr. Dist.*, Or.Supr., 152 P.2d 934 (1944).

\* \* \* \* \* \*

In this case, the Court agrees with the determination of the Court of Chancery that Fleer failed to establish that, as a matter of law, Fleer was entitled to judgment in its favor because Topps was not entitled to restitution based on Fleer's profits from its manufacture and sale of the baseball cards in question. Since Fleer failed to meet its burden, the Court of Chancery did not err in denying Fleer's motion for summary judgment. We affirm the decision of the Court of Chancery.