**COURT OF CHANCERY
OF THE
STATE OF DELAWARE**

SAM GLASSCOCK III
VICE CHANCELLOR

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DELAWARE 19947

Date Submitted: March 6, 2018
Date Decided: April 5, 2018

Philip Trainer, Jr., Esquire
Marie M. Degnan, Esquire
Ashby & Geddes
500 Delaware Avenue, 8th Floor
Wilmington, Delaware 19899

Stephen P. Lamb, Esquire
Meghan M. Dougherty, Esquire
Paul, Weiss, Rifkind, Wharton &
Garrison LLP
500 Delaware Avenue, Suite 200
Wilmington, Delaware 19899

Elizabeth A. Sloan, Esquire
Ballard Spahr LLP
919 N. Market Street, 11th Floor
Wilmington, Delaware 19801

      Re: *RCS Creditor Trust v. Nicholas S. Schorsch et al.*, Civil Action No. 2017-0178-SG

Dear Counsel:

      I addressed the Defendants' Motions to Dismiss in my Memorandum Opinion of November 30, 2017, granting the Motions in part, denying in part, and reserving decision in part.[1] The Plaintiff moved for reargument, in part, of that Memorandum Opinion. This Letter Opinion denies that Motion, and resolves the remaining issues regarding the Motions to Dismiss. An adumbration of the pertinent facts, and my reasoning, follows.

---

[1] *RCS Creditor Trust v. Schorsch*, 2017 WL 5904716, at *17 (Del. Ch. Nov. 30, 2017).

# I. BACKGROUND[2]

In this case, Plaintiff RCS Creditor Trust alleges that Defendants Nicholas S. Schorsch, Edward M. Weil, Jr., William M. Kahane, Peter M. Budko, and Brian S. Block (collectively, the "Control Defendants") breached the fiduciary duties they owed to RCS Capital Corporation ("RCAP").[3] The Control Defendants were the sole owners of Defendant AR Capital LLC, which created and sponsored non-traded real estate investment trusts ("REITs").[4] The Control Defendants also controlled RCAP, which marketed and distributed AR Capital's investment products through a subsidiary known as Realty Capital Services ("RCS").[5] After RCAP went public, the Control Defendants retained only a 25% interest in the company.[6] They maintained effective control, however, through their collective ownership of a single share of super-voting common stock.[7]

The Complaint primarily challenges the Control Defendants' use of their dual control of AR Capital and RCAP to enrich themselves at the expense of RCAP's public stockholders.[8] The Control Defendants allegedly hatched a scheme in which RCAP and RCS would enter into off-market wholesaling arrangements with AR

---

[2] I assume familiarity with my November 30 Memorandum Opinion and recite only those facts necessary to decide the pending Motions.
[3] *RCS Creditor Trust*, 2017 WL 5904716, at *1.
[4] *Id.*
[5] *Id.* at *3.
[6] *Id.* at *4.
[7] *Id.*
[8] *Id.* at *1.

Capital.[9]  In those arrangements, RCAP was responsible for marketing and selling AR Capital's investment products.[10]  If the Control Defendants had been loyal RCAP fiduciaries, the Plaintiff alleges, they would have bargained for RCAP to receive advisory fees from AR Capital in exchange for performing wholesaling services; instead, the Control Defendants diverted those fees to wholly owned subsidiaries of AR Capital.[11]

The Complaint additionally challenges several other business decisions the Control Defendants made for RCAP.[12]  Specifically, the Control Defendants caused RCAP to pursue three imprudent acquisitions and maintain irrationally high staffing levels at RCS.[13]  The overstaffing purportedly benefited AR Capital by enhancing RCS's ability to market and sell AR Capital's investment products.[14]  But the Control Defendants' refusal to fire any RCS employees harmed RCS, which was suffering "devastating losses that ultimately drove [it] into bankruptcy."[15]

On November 30, 2017, I upheld the core fiduciary duty claim in this case—namely, the challenge to the self-dealing transactions between AR Capital, in which the Control Defendants held a 100% economic stake, and RCAP, which they

---

[9] *Id.* at *9.
[10] *Id.* at *4.
[11] *Id.* at *5.
[12] *Id.* at *14–16.
[13] *Id.* at *14.
[14] *Id.* at *6.
[15] Compl. ¶ 64.

3

controlled but in which they held only a 25% interest.[16] I described the core claim as a classic example of self-dealing by corporate fiduciaries.[17] Indeed, the Control Defendants stood on both sides of the allegedly unfair wholesaling arrangements.[18] Worse still, all of those arrangements were negotiated and approved solely by the Control Defendants and their affiliates.[19] The allegations about the core claim thus invoked entire fairness review, which in turn precluded dismissal on a Rule 12(b)(6) motion.[20]

I reached a different conclusion as to the imprudent acquisitions and the purportedly irrational staffing decisions. Because the Control Defendants did not stand on both sides of those transactions, they did not automatically trigger entire fairness review.[21] Thus, to rebut the presumptions of the business judgment rule, the Plaintiff had to allege that the challenged transactions conferred material benefits on the Control Defendants that were not shared with RCAP's other stockholders.[22] I held that the Plaintiff had failed to meet this pleading burden.[23] In my view, the Plaintiff's allegations about the Control Defendants' financial circumstances and the benefits conferred by the challenged decisions failed to support a reasonable

---

[16] *RCS Creditor Trust*, 2017 WL 5904716, at *9–13.
[17] *Id.* at *13.
[18] *Id.* at *6.
[19] *Id.*
[20] *Id.* at *10.
[21] *Id.* at *14.
[22] *Id.*
[23] *Id.* at *16.

inference that those benefits were material to them.[24]   Turning to the overstaffing allegations in particular, the pertinent theory is that during a period when RCS was increasingly less profitable, staffing levels were maintained; the Plaintiff alleges they should have been reduced.[25]   With respect to that theory, I noted that the "Plaintiff provide[d] no details that allow[ed] me to quantify any benefit to AR Capital from having additional staff members at RCS push AR Capital product."[26] Thus, I held that the allegations relating to the imprudent acquisitions and the overstaffing at RCS failed to state a claim for breach of the duty of loyalty.[27]   I reserved decision on the Plaintiff's claims for unjust enrichment and aiding and abetting breach of fiduciary duty pending supplemental briefing on the viability of those claims in light of my rulings on the fiduciary duty count.[28]

The Plaintiff has moved for reargument on one narrow issue: the dismissal of its claim that the Control Defendants breached the duty of loyalty by causing RCS to maintain irrationally high staffing levels.  The parties have also submitted the requested supplemental briefing on the unjust enrichment and aiding and abetting

---

[24] *Id.* at *15–16.

[25] *Id.* at *6.

[26] *Id.* at *15.

[27] *Id.* at *16.

[28] *Id.* at *17.  The Complaint also alleges that the Control Defendants breached their fiduciary duties by facilitating proxy fraud.  *Id.* at *13.  In my November 30 Memorandum Opinion, I held that these allegations failed to state a claim for relief.  *Id.*  I also dismissed Defendant Louisa Quarto from the litigation based on the Complaint's failure to plead facts giving rise to a claim for breach of fiduciary duty against her.  *Id.* at *16.

5

claims. I address the Motion for Limited Reargument first. I then turn to the balance of the Motions to Dismiss.

## II. ANALYSIS

*A. Motion for Limited Reargument*

Court of Chancery Rule 59(f) allows a party to move for reargument within five days after the filing of the Court's opinion.[29] The standard governing motions for reargument is settled. This Court will deny reargument unless it "overlooked a decision or principle of law that would have controlling effect or . . . misapprehended the facts or the law so the outcome of the decision would be different."[30] "Where the motion merely rehashes arguments already made by the parties and considered by the Court when reaching the decision from which reargument is sought, the motion must be denied."[31] Nor is reargument warranted simply because a party disagrees with the Court's decision.[32] Thus, if the ruling on which reargument is sought was a close call, or one on which reasonable minds could differ, reargument will be denied.[33] In my view, the Plaintiff has failed to meet its "heavy burden" of

---

[29] Ct. Ch. R. 59(f).

[30] *Pontone v. Milso Indus. Corp.*, 2014 WL 4352341, at *1 (Del. Ch. Sept. 3, 2014).

[31] *AM Gen. Holdings LLC v. Renco Grp., Inc.*, 2017 WL 3046819, at *1 (Del. Ch. July 18, 2017).

[32] *Tumulty v. Schreppler*, 2015 WL 2374714, at *1 (Del. Ch. May 15, 2015).

[33] *See Bhd. of Maint. of Way Emps. Div. of the Int'l Bhd. of Teamsters v. Ind. Harbor Belt R.R. Co.*, 2014 WL 4987972, at *4 (N.D. Ind. Oct. 7, 2014) ("[J]ust because a matter might be a close call doesn't mean reconsideration is appropriate."); *United States v. Sanchez-Gonalez*, 2011 WL 4043568, at *2 (S.D. Cal. Sept. 12, 2011) ("This motion . . . presents a close call. But on reconsideration, where the Court must find clear error, the Court is not persuaded that reversal is appropriate."); *Crigler v. Richardson*, 2010 WL 2696506, at *5 (M.D. Tenn. July 7, 2010) (denying a motion for reconsideration on "an issue about which reasonable minds could, and have,

6

showing that I misapprehended the law or the facts in an outcome-determinative fashion.[34]

First, the Plaintiff argues that, "in a very real sense," the Control Defendants stood on both sides of "the macro business decision to maintain extremely high staffing" at RCS.[35] The Plaintiff points out that each RCS wholesaler was hired primarily to sell AR Capital products. Thus, the Plaintiff reasons, maintaining unreasonably high staffing levels at RCS served AR Capital's interests in a particularly direct way. While the Plaintiff does not explicitly so argue, the implication appears to be that entire fairness automatically applies to the decision to overstaff RCS. I disagree.

Delaware law is clear: "Entire fairness review ordinarily applies in cases where a fiduciary either *literally* stands on both sides of the challenged transaction or where the fiduciary 'expects to derive personal financial benefit from the [challenged] transaction in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally.'"[36] And if the fiduciary

---

differed"). The decisions just cited involved application of the analogous federal standards governing motions for reconsideration. I look to them for guidance in interpreting Court of Chancery Rule 59(f). *Cf. Russum v. IPM Dev. P'ship LLC*, 2015 WL 4885480, at *2 n.8 (Del. Super. Aug. 14, 2015) (looking to federal caselaw for guidance because "Superior Court Civil Rule 59(e)[, which governs motions for reargument,] tracks Federal Rule of Civil Procedure 59(e)").

[34] *In re ML/EQ Real Estate P'ship Litig., Consol.*, 2000 WL 364188, at *1 (Del. Ch. Mar. 22, 2000).

[35] Pl.'s Mot. for Limited Reargument ¶ 18.

[36] *eBay Domestic Holdings, Inc. v. Newmark*, 16 A.3d 1, 37–38 (Del. Ch. 2010) (emphasis added) (quoting *Litle v. Waters*, 1992 WL 25758, at *4 (Del. Ch. Feb. 11, 1992)).

does not stand on both sides of the challenged transaction, a plaintiff seeking to rebut the business judgment rule must plead that any non-pro rata benefit the fiduciary received was material to her.[37] Here, the Plaintiff acknowledges that "the hiring of individual wholesalers is not technically a contract *between* RCS and AR Capital."[38] I am aware of no authority supporting the position that, even when a fiduciary does not stand on both sides of a transaction, entire fairness automatically applies if the transaction "directly implicates" her interests, regardless of materiality to her.[39] To the extent the Plaintiff is arguing for such a rule, I decline to adopt it.

Next, the Plaintiff claims it has adequately alleged that the decision to maintain irrationally high staffing levels at RCS was material to the Control Defendants. A benefit is material if it is so significant, "in the context of the [fiduciary]'s economic circumstances, as to have made it improbable that [she] could perform her fiduciary duties to the . . . shareholders without being influenced by her overriding personal interest."[40] The Court must apply "a subjective 'actual person' standard to determine whether a *particular* director's interest is material and debilitating."[41]

---

[37] *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002).
[38] Pl.'s Mot. for Limited Reargument ¶ 18.
[39] *Id.*
[40] *In re Gen. Motors Class H S'holders Litig.*, 734 A.2d 611, 617 (Del. Ch. 1999).
[41] *Orman*, 794 A.2d at 24.

The Plaintiff points out that the Complaint describes each Control Defendant's equity stake in AR Capital. For example, Block held a 3.03% interest in AR Capital, which the Plaintiff says was worth "tens of millions of dollars."[42] The Plaintiff then argues that these valuable equity stakes demonstrate that the Control Defendants had "a strong motivation to further AR Capital's interests."[43] That is true, but beside the point. The question is not whether the Control Defendants generally had an interest in benefiting AR Capital at RCAP's expense; I have already recognized the "perverse incentives" created by the misalignment of equity and control at these two companies.[44] Instead, the question is whether the Control Defendants received material benefits from maintaining RCS's existing staffing levels as opposed to firing some (undisclosed) appropriate number of employees. The Complaint itself is silent as to how many superfluous employees RCS kept on, or how much additional profit for AR Capital those unnecessary employees helped generate. That is why I held the Complaint did not "allow me to quantify any benefit to AR Capital from having additional staff members at RCS push AR Capital product."[45]

---

[42] Pl.'s Mot. for Limited Reargument ¶ 20 n.5.
[43] *Id.* ¶ 20.
[44] *E.g.*, *RCS Creditor Trust*, 2017 WL 5904716, at *6.
[45] *Id.* at *16.

9

According to the Plaintiff, it has alleged enough facts to quantify such benefits. It states that "during the period when RCS lost more than $62 million . . . , it raised more than $13 billion in capital – providing AR Capital with an income stream in perpetuity of approximately $130 million per year."[46] Again, however, these allegations do not address the core of the materiality inquiry here: what portion of these benefits was attributable to the superfluous RCS employees? Absent well-pled facts answering that question, I cannot evaluate whether the purported overstaffing at RCS conferred material benefits on the Control Defendants.

Finally, the Plaintiff suggests it can satisfy the materiality requirement simply by alleging that the Control Defendants' refusal to fire any RCS employees was irrational from RCS's perspective, but made perfect sense for AR Capital.[47] To my mind, that amounts to an allegation that the Control Defendants acted in bad faith by refusing to cut staff when RCS was experiencing financial difficulties. "[A] plaintiff may show a lack of good faith by establishing that a [corporate fiduciary's] decision

---

[46] Pl.'s Mot. for Limited Reargument ¶ 8 (emphasis omitted) (citing Compl. ¶ 60).

[47] *See* Mar. 6, 2018 Oral Arg. Tr. 17:20–18:14 ("MR. HOROWITZ: The second question is -- and I think it's an interesting question -- whether, where pre-filing investigation doesn't allow a plaintiff to make detailed allegations about the precise economic benefit to the defendants or what the defendants' net worth is, for example -- to raise an issue that Your Honor mentioned in the opinion – so that you could say, 'Oh, gee, they stood to gain millions of dollars and, given these defendants' circumstances, that was probably a corrupting influence,' can you, alternatively, satisfy this materiality standard by alleging facts that give rise to a different reasonable inference, an inference that the decision would have been irrational but for the defendants' self-interest, so that the only reasonable explanation for the decision, assuming the defendants' rationality -- which I think is a fair assumption to make -- is that they made the decision because of their self-interest?").

10

was 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'"[48] "This is a high pleading standard, as Delaware courts typically frame a lack of good faith in terms of 'intentional' misconduct."[49] The Complaint does not satisfy this exacting standard. As just noted, the Plaintiff alleges that RCS should have been firing people when the business was cratering. Maybe so. But I cannot say that the Control Defendants' decision to keep on RCS employees in the face of serious financial troubles "lacks any rationally conceivable basis."[50] Indeed, the Complaint itself acknowledges that "more salespeople [at RCS] spending more money produced more sales, albeit at a dramatically slower pace [in light of RCS's financial difficulties]."[51] The Plaintiff's bad-faith theory does not rebut the presumptions of the business judgment rule.

Having determined, on examination of the core claim, that the Complaint sufficiently pleads that the Control Defendants looted the Peter of RCAP to benefit their Paul—AR Capital—it is, I acknowledge, tempting to follow the Plaintiff's suggestion to its conclusion and subject *all* business decisions at RCAP, including staffing decisions, to entire fairness review. The core claim, which I have upheld, involves the purportedly off-market nature of the wholesaling arrangements between

---

[48] *Teamsters Union 25 Health Servs. & Ins. Plan v. Baiera*, 119 A.3d 44, 63 (Del. Ch. 2015) (quoting *In re J.P. Stevens & Co., Inc. S'holders Litig.*, 542 A.2d 770, 780–81 (Del. Ch. 1988)).
[49] *Id.*
[50] *Frederick Hsu Living Trust v. ODN Holding Corp.*, 2017 WL 1437308, at *25 (Del. Ch. Apr. 14, 2017).
[51] Compl. ¶ 67.

11

RCAP and AR Capital. The costs of running RCAP, including RCS's labor costs, are part of the entire fairness analysis that I must ultimately undertake. Stand-alone claims concerning certain business decisions at RCAP—including acquisitions and staffing levels—are, to my mind, however, insufficiently pled to survive independent of the core claim. Thus, because the Plaintiff has failed to show that I "misapprehended the law or the facts so that the outcome of the decision would be affected," I deny the Motion for Limited Reargument.[52]

*B. The Remainder of the Motions to Dismiss*

As noted above, in my November 30 Memorandum Opinion, I reserved decision on the Plaintiff's claims for unjust enrichment and aiding and abetting breach of fiduciary duty pending supplemental briefing.[53] The unjust enrichment claim is brought against AR Capital, AR Global LLC (the successor to AR Capital),[54] and several wholly owned AR Capital subsidiaries (the "Advisor Defendants") that provide "management services" to AR Capital's investment

---

[52] *Bear Stearns Mortg. Funding Trust 2006-SL1 v. EMC Mortg. LLC*, 2015 WL 139731, at *8 (Del. Ch. Jan. 12, 2015) (quoting *Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995)). The Plaintiff also seeks reargument on the ground that the Defendants never argued for dismissing the overstaffing claim based on a failure to plead materiality. I disagree with that characterization of the briefing and argument. *See, e.g.*, Defs.' Opening Br. 36 (arguing that the allegations about Weil and Quarto "do not provide a basis for reasonably inferring that these defendants' interest in AR Capital was so *material* to these defendants that they would run RCS into the ground to benefit AR Capital" (emphasis added)). In any event, because the Plaintiff has failed to show that reargument is warranted on the merits, I need not address the procedural argument.

[53] *RCS Creditor Trust*, 2017 WL 5904716, at *17.

[54] *Id.* at *2.

vehicles.[55] The Advisor Defendants allegedly received the management fees that would have gone to RCAP (or a wholly owned RCAP subsidiary) if the wholesaling arrangements between RCAP and AR Capital had been negotiated at arm's length.[56] The aiding and abetting claim is brought against the Control Defendants, Quarto, and RCAP Holdings LLC ("Holdings").[57] Holdings' primary asset was the single share of super-voting RCAP common stock used by the Control Defendants to control RCAP.[58]

The Defendants have moved to dismiss the aiding and abetting and unjust enrichment claims under Court of Chancery Rule 12(b)(6). When reviewing a Rule 12(b)(6) motion,

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[59]

---

[55] *Id.* at *2, *17. The Advisor Defendants are American Realty Capital Retail Advisor, LLC, American Finance Advisors, LLC, American Realty Capital Healthcare III Advisors, LLC, American Realty Capital Hospitality Advisors, LLC, New York City Advisors, LLC, Global Net Lease Advisors, LLC, American Realty Capital Healthcare II Advisors, LLC, New York Recovery Advisors, LLC, and BDCA Adviser. *Id.* at *2.

[56] *Id.* at *5. The Plaintiff also seeks the imposition of a constructive trust to remedy the alleged unjust enrichment.

[57] *Id.* at *1, *17.

[58] *Id.* at *1.

[59] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes and internal quotation marks omitted).

13

I need not, however, "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[60]

### 1. Aiding and Abetting Breach of Fiduciary Duty

The Plaintiff's aiding and abetting claim is pled in the alternative to its fiduciary duty claim.[61] Specifically, the Plaintiff alleges that, even if the Control Defendants (and Quarto[62]) "are determined not to have owed direct fiduciary duties of care and loyalty to RCAP and/or any of its subsidiaries at any relevant time, each of these defendants knowingly participated in breaches of fiduciary duty by other defendants and thus is liable for aiding and abetting such breaches."[63] The Defendants argue that the aiding and abetting claim must be dismissed because the Complaint lacks facts suggesting that the Control Defendants knowingly participated in a breach of fiduciary duty. Alternatively, the Defendants ask me to dismiss the aiding and abetting count to the extent it relies on alleged breaches of fiduciary duty dismissed in my November 30 Memorandum Opinion.

To plead a claim for aiding and abetting breach of fiduciary duty, a plaintiff must allege "(i) the existence of a fiduciary relationship, (ii) a breach of the fiduciary's duty, (iii) knowing participation in that breach by the defendants, and

---

[60] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).
[61] Compl. ¶ 132.
[62] Because Quarto has already been dismissed from this litigation, I address the aiding and abetting claim only as it relates to the Control Defendants.
[63] *Id.*

14

(iv) damages proximately caused by the breach."[64]  "An adequate pleading of 'knowing participation' requires a pleading of scienter."[65]  "To establish scienter, the plaintiff must demonstrate that the aider and abettor had 'actual or constructive knowledge that their conduct was legally improper.'"[66]

At the outset, the Plaintiff does not dispute that its aiding and abetting claim must be dismissed to the extent it is premised on already dismissed allegations of breach of fiduciary duty.  As noted above, I have dismissed any claim for breach of fiduciary duty based on the purportedly imprudent acquisitions, the overstaffing at RCS, and the supposed efforts to facilitate proxy fraud.  Thus, I dismiss the Plaintiff's claim for aiding and abetting breach of fiduciary duty to the extent it relies on those purported breaches.[67]

The aiding and abetting claim survives, however, to the extent it rests on the core claim in this case: that the "Control Defendants engineered a series of transactions between RCAP and AR Capital that allegedly siphoned value away from RCAP and to AR Capital."[68]  The Plaintiff brings its aiding and abetting count

---

[64] *RBS Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 861 (Del. 2015).

[65] *Cumming v. Edens*, 2018 WL 992877, at *26 (Del. Ch. Feb. 20, 2018).

[66] *RBC Capital Mkts., LLC*, 129 A.3d at 862 (emphasis omitted) (quoting *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008)).

[67] *See, e.g.*, *Madison Realty Partners 7, LLC v. Ag ISA, LLC*, 2001 WL 406268, at *6 n.19 (Del. Ch. Apr. 17, 2001) ("The plaintiffs' claim against Angelo Gordon for aiding and abetting AGGP's breaches of fiduciary duty must . . . be dismissed because there is no legally sufficient underlying claim for breach of fiduciary duty against AGGP.").

[68] *RCS Creditor Trust*, 2017 WL 5904716, at *10.

15

to address the possibility that any of the Control Defendants may later be found not to have owed fiduciary duties to RCAP. The Complaint pleads that the Control Defendants were either officers or directors of RCAP at all relevant times.[69] The Complaint also supports a reasonable inference that the Control Defendants acted as a control group with regard to RCAP.[70] Thus, at the pleading stage, I may infer that the Control Defendants owed fiduciary duties to RCAP.[71] But what is pled may turn out not to be true, and it is possible that some of the Control Defendants did not stand in a fiduciary relation to RCAP at any given time. This Court has allowed plaintiffs to plead aiding and abetting claims in the alternative to account for this possibility.[72]

The Defendants' only response is that the Plaintiff has failed to adequately allege that any of the Control Defendants knowingly participated in a breach of

---

[69] *Id.* at *10 n.156.

[70] *Id.*

[71] *Id.*

[72] *See Wallace v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999) ("This claim [for aiding and abetting breach of fiduciary duty], which on its face assumes the officers, parents and affiliates to be 'non-fiduciaries,' seems inconsistent with plaintiffs [sic] primary argument that each defendant owes fiduciary duties to the Limited Partners. Nonetheless, I will not dismiss plaintiffs' aiding and abetting claim as I may later decide, after discovery or at trial, that plaintiffs cannot prove the pleaded requisite control necessary to establish the existence of a fiduciary relationship between each defendant and the Limited Partnership and/or the Limited Partners. Therefore, plaintiffs may continue to pursue the inconsistent, conflicting, aiding and abetting claim if they so choose." (footnote omitted)); *see also In re Nine Sys. Corp. S'holders Litig.*, 2014 WL 4383127, at *48 (Del. Ch. Sept. 4, 2014) ("[T]he Plaintiffs have standing to bring this aiding and abetting claim directly against Dwyer, Wren, Javva, and Catalyst. But, because the Court previously concluded that Wren, Javva, and Catalyst breached their fiduciary duties as a control group, their liability for aiding and abetting is limited to the extent that they did not constitute a control group. In other words, the Plaintiffs are limited to one recovery—breach of fiduciary duty or aiding and abetting— as against Wren, Javva, and Catalyst."), *aff'd sub nom. Fuchs v. Wren Holdings, LLC*, 129 A.3d 882 (Del. 2015).

fiduciary duty. The Defendants are wrong. I have already held that the Complaint states a claim against the Control Defendants for breach of the duty of loyalty. That claim rests on allegations about a self-dealing scheme hatched by the Control Defendants themselves. Specifically, "by forcing RCAP to bear all the costs of wholesaling AR Capital's investment vehicles, the Control Defendants enriched AR Capital, in which they (together with Schorsch's wife) held a 100% economic stake, to the detriment of RCAP, in which they held only a 25% economic interest."[73] This scheme allegedly involved blatantly off-market arrangements between AR Capital and RCAP.[74] It is reasonably conceivable that each of the Control Defendants understood that his assistance in looting RCAP for AR Capital's benefit contributed to a breach of fiduciary duty.[75] Thus, if Schorsch (or any of the other Control Defendants) happened not to owe fiduciary duties to RCAP during one part of the scheme, he still could be held liable under an aiding and abetting theory for his deliberate participation in any self-dealing transactions that took place during that time. I decline to dismiss the aiding and abetting count.

---

[73] *RCS Creditor Trust*, 2017 WL 5904716, at *5.
[74] *Id.*
[75] *See Malpiede v. Townson*, 780 A.2d 1075, 1097 (Del. 2001) ("Knowing participation in a board's fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach.").

## 2. Unjust Enrichment

The Plaintiff alleges that AR Capital, AR Global (AR Capital's successor), and the Advisor Defendants were unjustly enriched "because each received the benefits of income flowing from sales made and supported by RCAP without entering into customary arrangements to share advisory and management business with RCAP on terms consistent with . . . arm's-length market transactions."[76] In particular, the Advisor Defendants, which were wholly owned AR Capital subsidiaries, received management fees that would have gone to RCAP (or an RCAP subsidiary) but for the Control Defendants' disloyal conduct. And, under the wholesaling arrangements between AR Capital and RCAP, AR Capital received equity in each of the Advisor Defendants, equity that again would have gone to RCAP had those arrangements been negotiated at arm's length.[77] Assuming, as I must at the pleading stage, that these allegations are true, the Complaint states a claim for unjust enrichment.

---

[76] Compl. ¶ 135.

[77] *See id.* ¶ 47 ("In light of the inherent unprofitability of th[e wholesaling] portion of the business, wholesalers must either: (a) function as a cost center within a larger vertically integrated organization, or (b) negotiate for a share of the ongoing management economics generated by the investments they raise, either through *a joint venture interest in the advisory*, or through advisor/subadvisor contractual relationship with the sponsor." (emphasis added)); *id.* ¶ 55 (noting that "the off-market nature of RCAP's existing business arrangements with AR Capital" would be revealed by information regarding Strat Cap, including that it "received between 20% and 25% of the ongoing management economics – either through *an interest in the entities created to provide advisory services* or through a 'sub-advisory' contract" (emphasis added)).

18

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[78] "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[79] In evaluating an unjust enrichment claim, I must first determine "whether a contract already governs the relevant relationship between the parties."[80] "If a contract comprehensively governs the parties' relationship, then it alone must provide the measure of the plaintiff's rights and any claim of unjust enrichment will be denied."[81] But when a plaintiff alleges that "it is the [contract], itself, that is the unjust enrichment," the existence of the contract does not bar the unjust enrichment claim.[82] In other words, "[t]he contract itself is not necessarily the measure of [the] plaintiff's right where the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake and the [defendant] has been unjustly enriched by the benefits flowing from the contract."[83]

---

[78] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).
[79] *Id.*
[80] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).
[81] *Id.*
[82] *McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008); *accord Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *27 (Del. Ch. Nov. 26, 2014).
[83] Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 12.01[b] (2016) (citing *McPadden*, 964 A.2d at 1276).

The Defendants first argue that the unjust enrichment claim fails because the conduct at issue was governed by the contracts between the Advisor Defendants, AR Capital, and RCS. It is true that the Advisor Defendants received management fees from AR Capital pursuant to a series of advisory agreements. But the core claim in this case is premised in large part on the allegation that the Control Defendants breached their fiduciary duties by causing the Advisor Defendants, rather than RCAP, to receive those management fees. Faithful fiduciaries, the Plaintiff asserts, would have bargained for RCAP to receive a portion of the "management economics."[84] Indeed, according to the Plaintiff, that is how wholesalers in the REIT industry typically make most of their profits. Thus, the Complaint supports a reasonable inference that the advisory agreements (and the benefits they conferred on the Advisor Defendants) resulted from the Control Defendants' breaches of fiduciary duty. The unjust enrichment claim is therefore not barred by the existence of binding contracts between AR Capital, RCS, and the Advisor Defendants.[85]

Next, the Defendants argue that unjust enrichment cannot be invoked against the Advisor Defendants because they earned the advisory fees they received for work performed under the advisory agreements. Thus, the Advisor Defendants

---

[84] Compl. ¶ 47.

[85] *See McPadden*, 964 A.2d at 1276 (upholding an unjust enrichment claim where a contract existed between the parties but the plaintiff alleged that the contract was the product of one of the defendants' "manipulative conduct").

20

supposedly did not receive any benefits to which they were not entitled. Relatedly, the Defendants point out that the Complaint does not allege the Advisor Defendants themselves engaged in wrongful conduct. These arguments do not defeat the Plaintiff's unjust enrichment claim.

For starters, it is irrelevant that the Advisor Defendants performed actual work in exchange for receiving advisory fees from AR Capital. The Plaintiff does not seek to disgorge the gross fees received by the Advisor Defendants; instead, it seeks only the profits that would have gone to RCAP or an RCAP subsidiary if the Control Defendants had been faithful fiduciaries.[86] Indeed, this is the heart of the Plaintiff's core claim: that the Control Defendants breached their fiduciary duties by diverting the lucrative advisory fees from RCAP to AR Capital subsidiaries. The Complaint supports a reasonable inference that the Advisor Defendants were not entitled to the profits realized from those fees. And, contrary to the Defendants' suggestion, the Plaintiff need not allege that the Advisor Defendants themselves engaged in wrongdoing in order to invoke unjust enrichment against them.[87] It is sufficient to plead, as the Plaintiff has here, that the defendant received "benefits that in equity

---

[86] *E.g.*, Sept. 29, 2017 Oral Arg. Tr. 70:7–10.

[87] *See, e.g.*, *Schock v. Nash*, 732 A.2d 217, 232 (Del. Ch. 1999) ("Restitution is permitted even when the defendant retaining the benefit is not a wrongdoer."); *see also Topps Chewing Gum, Inc.*, 539 A.2d at 1063 ("The remedy of restitution may be invoked regardless of whether or not the party retaining the benefit is found to be a wrongdoer.").

21

and good conscience he ought not to keep, even though he may have received those

benefits honestly in the first instance."[88]

Finally, the Defendants ask me to dismiss the Plaintiff's "claim" for

imposition of a constructive trust. A constructive trust is not itself a cause of action,

however; instead, it is an equitable remedy designed to "correct the unlawful vesting,

or assertion of, legal title."[89] It is premature, at this stage of the litigation, to discuss

the propriety or applicability of particular equitable remedies.[90]

## III. CONCLUSION

For the reasons stated above, the Plaintiff's Motion for Limited Reargument

is denied, and the Defendants' Motions to Dismiss are granted in part and denied in

---

[88] *Topps Chewing Gum, Inc.*, 539 A.2d at 1063 (internal quotation marks and citation omitted). As noted above, the Complaint also alleges that AR Capital (and its successor, AR Global) were unjustly enriched when they received equity in the Advisor Defendants, equity that would have gone to RCAP but for the Control Defendants' disloyal conduct.

[89] *Triton Constr. Co., Inc. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at *28 (Del. Ch. May 18, 2009) (quoting *E. Lake Methodist Episcopal Church, Inc. v. Trs. of Peninsula-Del. Annual Conference of the United Methodist Church, Inc.*, 731 A.2d 798, 809 n.4 (Del. 1999)), *aff'd*, 988 A.2d 938 (Del. 2010); *see also VTB Bank v. Navitron Projects Corp.*, 2014 WL 1691250, at *6 n.60 (Del. Ch. Apr. 28, 2014) ("Under Delaware law, a constructive trust is a remedy, not a substantive cause of action.").

[90] *See, e.g.*, *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000) ("In response to a motion to dismiss, I simply determine whether plaintiff has stated a claim for which relief might be granted. If I find that plaintiffs have stated cognizable claims, then 'the nature of that relief is not relevant and need not be addressed.' Because the determination of relief is beyond the scope of this motion and premature without an established evidentiary record, I will not address this issue." (footnotes omitted) (quoting *Chaffin v. GNI Grp., Inc.*, 1999 WL 721569, at *7 (Del. Ch. Sept. 3, 1999))).

part.  The parties should submit an appropriate form of order.

Sincerely,

*/s/ Sam Glasscock III*

Sam Glasscock III