**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

ANGELA TSIONAS, )
)
      Plaintiff, )
)
    v. )  C.A. No. 2023-0591-BWD
)
JG, LLC and JAMES GRANT, )
)
      Defendants. )

## <u>ORDER RESOLVING MOTION TO DISMISS</u>

WHEREAS:

A.    On June 5, 2023, plaintiff Angela Tsionas initiated this action through the filing of a Verified Complaint. Dkt. 1. On September 18, 2023, Tsionas filed an Amended Verified Complaint (the "Complaint").[1] Am. Verified Compl. [hereinafter, "Compl."], Dkt. 3.

B.    As alleged in the Complaint, in December 2022, Tsionas and defendant James Grant formed a business venture to purchase real estate in Milford, Delaware (the "Property"). *Id*. ¶¶ 6-7, 10. The parties considered forming a limited liability company called "JG, LLC" to acquire the Property, but never did so. *Id*. ¶ 10.

---

[1] The following facts are taken from the Complaint and the documents incorporated by reference therein. *See Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

Instead, they formed a partnership under the Delaware Revised Uniform Partnership Act ("DRUPA").[2]

C.     The parties agreed that "Tsionas would provide the initial earnest money deposit to acquire the Property and would otherwise use her relationships with various banks to attain lending to acquire the Property, while Grant, in turn, had been the source of the prospective purchase and would oversee the Property until it subsequently resold, hopefully at a profit." *Id.* ¶ 11. "Upon the successful resale of the Property, Tsionas would receive recovery of any amounts she had fronted that were still unrecovered, after which Grant and Tsionas would split the profits of the resale equally." *Id.* ¶ 12.

D.     On January 13, 2023, Grant, purportedly on behalf of JG, LLC, executed a Purchase and Sale Agreement (the "PSA") with the sellers of the Property. *Id.* ¶ 13. Under the PSA, the parties agreed to a purchase price of $800,000, due at closing, with a $25,000 deposit to be held in escrow. Def. James Grant's Op. Br. In Supp. Of His Mot. To Dismiss [hereinafter, "OB"], Ex. A ¶ 2(a), Dkt. 17.

E.     The PSA provides for a 120-day "Due Diligence Period" "during which to make all reviews, inspections, audits, and investigations desired by Purchaser to

---

[2] *See* 6 *Del. C.* § 15-202(a) ("Except as otherwise provided in subsection (b) of this section, the association of 2 or more persons (i) to carry on as co-owners a business for profit forms a partnership, whether or not the persons intend to form a partnership . . . .").

obtain financing . . . ." *Id.* ¶ 5(b). Prior to the expiration of the Due Diligence Period "or any extension therefore pursuant to paragraph 5(f)," the purchaser "shall, at Purchaser's sole discretion, have the right to terminate th[e] Agreement for any reason" and the deposit "shall be refundable and released to the purchaser . . . ." *Id.* After the Due Diligence Period, "the deposit shall be non-refundable, unless Seller is unable to settle." *Id.* ¶ 2(a).

F.      The PSA does not include a "paragraph 5(f)." But under paragraphs 2(b)-(c), if the parties extend the Due Diligence Period by 90 days, "the purchase price shall be [$825,000], and Purchaser shall pay [$25,000] as an extension fee, to be released to the Seller, and non-refundable even if the Purchaser terminates the agreement during the Due [D]iligence [P]eriod as extended." *Id.* ¶ 2(b).

G.      After Grant signed the PSA on behalf of JG, LLC, Tsionas issued a personal check for $25,000 to be held in escrow to satisfy the deposit requirement under the PSA. Compl. ¶ 17; *see also* OB, Ex. A ¶ 2(a).

H.      Tsionas then initiated an environmental study on the Property. Compl. ¶ 18. "During the pendency of the environmental study, on or about May 10, 2023, Grant contacted Tsionas to advise her that additional money, [the extension fee of] $25,000, needed to be paid to Seller for the PSA to continue." *Id.* ¶ 19. "With the environmental study still underway, Tsionas asked Grant to discuss postponement of any additional payments until the environmental work was prepared[,]" but

3

"Grant informed Tsionas on or about May 11, 2023, that the Sellers would not negotiate for a delay." *Id*. ¶¶ 20-21. Tsionas alleges that statement was false, "and in fact, [the] Sellers had agreed to an extension." *Id*. ¶ 22.

I.      Believing the sellers would not extend the deadline to pay the $25,000 extension fee, Tsionas asked Grant to terminate the PSA. *Id*. ¶¶ 25-26. Grant agreed to do so. *Id*. ¶ 25. But he never did. Instead, Grant delivered Tsionas a personal check for $25,000 "in the hope that Tsionas would not notice that the funds had not come from" the parties' broker, "then assumed the PSA on his own . . . without Tsionas' involvement, knowledge or agreement." *Id*. ¶¶ 31, 33. Grant then assigned the PSA to a different entity, Milford Partners, LLC, which subsequently purchased the Property. *Id*. ¶¶ 41-42.

J.      The Complaint asserts five counts: Count I alleges a claim for "Breach of Partnership"; Count II alleges a claim for "Breach of Fiduciary Duty"; Count III alleges a claim for "Quantum Meruit"; Count IV alleges a claim for "Unjust Enrichment"; and Count V alleges a claim for "Tortious Interference with Prospective Contractual Relations." *Id*. ¶¶ 43-63.

K.      On November 3, 2023, Grant moved to dismiss the Complaint (the "Motion to Dismiss"), and on March 1, 2024, filed an opening brief in support thereof. Dkts. 11, 17. On April 16, 2025, Tsionas filed an answering brief in opposition to the Motion to Dismiss. Pl. Angela Tsionas' Resp. Br. In Opp'n To

4

Def. James Grant's Mot. To Dismiss [hereinafter, "AB"], Dkt. 19. On April 18, 2024, Grant filed a reply brief in further support of the Motion to Dismiss. Def. James Grant's Reply Br. In Supp. Of His Mot. To Dismiss [hereinafter, "RB"], Dkt. 20. Oral argument on the Motion to Dismiss is unnecessary.

NOW, THEREFORE, IT IS HEREBY ORDERED, this 9th day of May, 2024, as follows:

1.      Grant has moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well-pleaded' if they give the opposing party notice of the claim; [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id.* at 537.

2.      Grant first contends that JG, LLC is not a proper defendant because it does not exist. *See* OB at 8-9. Tsionas concedes that "JG, LLC does not exist as a lawful entity," but nevertheless contends that it should remain as a defendant because it "is a contracting party under the PSA . . . ." Compl. ¶ 4; AB at 5. A purported entity without "legal existence" cannot "sue or be sued." *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 3300042, at *2 & n.23 (Del. Ch. May 8, 2023).

5

To the extent the Complaint purports to assert claims against JG, LLC, they are DISMISSED.

3. Count II of the Complaint alleges a claim for breach of fiduciary duty. Compl. ¶¶ 46-49. The parties do not, at this stage, dispute that they formed a general partnership. Section 15-404 of DRUPA therefore supplies the applicable standard of conduct. It provides, in part:

> (a) The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections (b) and (c) of this section.

> (b) A partner's duty of loyalty to the partnership and the other partners is limited to the following:

>> (1) To account to the partnership and hold as trustee for it any property, profit or benefit derived by the partner in the conduct or winding up of the partnership business or affairs or derived from a use by the partner of partnership property, including the ***appropriation of a partnership opportunity***;

>> (2) To refrain from dealing with the partnership in the conduct or winding up of the partnership business or affairs as or on behalf of a party having an interest adverse to the partnership; and

>> (3) To refrain from ***competing with the partnership*** in the conduct of the partnership business or affairs before the dissolution of the partnership.

6 *Del. C.* § 15-404(a)-(b) (emphasis added). The Complaint alleges that when Tsionas asked Grant to discuss postponing payment of the extension fee, Grant falsely represented that the sellers would not agree to a postponement to induce Tsionas to withdraw from the partnership so that Grant could pursue the opportunity

6

for himself. Compl ¶¶ 20-24, 28. Those allegations state a claim for breach of the duty of loyalty. Grant argues that Tsionas's theory "does not align with her actual communications[,]" but that fact issue cannot be resolved on a motion to dismiss. RB at 8. Grant also contends that "when the parties stopped jointly pursuing" the Property, "neither owed duties to the other." *Id*. at 10 (citing 6 *Del. C.* § 15-801(2)(ii)-(iii)). That may be true, but Tsionas alleges that Grant breached his duty of loyalty *before* the partnership dissolved. Compl. ¶¶ 47-49. The Motion to Dismiss Count II is DENIED.

4.     Count I of the Complaint purports to bring a claim for "Breach of Partnership." *Id*. ¶¶ 43-45. Grant argues that "Count I does not identify if the claim is in tort or in contract; does identify what duty or obligation Grant purportedly breached; and does not identify how Grant breached any duty or obligation." OB at 10. In response, Tsionas cites 6 *Del. C.* § 15-405,[3] but fails to specify any contract

---

[3] *See* 6 *Del. C.* § 15-405

> (b) A partner may maintain an action against the partnership or another partner for legal or equitable relief, with or without an accounting as to partnership business, to:
>
> > (1) Enforce the partner's rights under the partnership agreement;
> >
> > (2) Enforce the partner's rights under this chapter, including:
> >
> > > (i) The partner's rights under § 15-401, § 15-403 or § 15-404 of this title;
> > >
> > > (ii) The partner's right on dissociation to have the partner's interest in the partnership purchased pursuant to § 15-701 of

term or statutory right she seeks to enforce. *See* AB at 6-7 (citing 6 *Del. C.* § 15-405). To the extent Count I seeks to enforce Tsionas's rights under 6 *Del. C.* § 15-404, it is also duplicative of Count II.[4] Count I is DISMISSED.

5. In briefing, Tsionas failed to respond to Grant's arguments for dismissal of Counts III and V. "Issues not briefed are deemed waived." *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999). Counts III and V are DISMISSED.

6. Finally, Count IV alleges an alternative claim for unjust enrichment. "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'" *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)). "The elements of unjust enrichment are (1) an enrichment, (2) an

---

this title or enforce any other right under subchapter VI or VII of this chapter; or

(iii) The partner's right to compel a dissolution and winding up of the partnership business under § 15-801 of this title or enforce any other right under subchapter VIII of this chapter; or

(3) Enforce the rights and otherwise protect the interests of the partner, including rights and interests arising independently of the partnership relationship.

[4] *Cf. Backer v. Palisades Growth Capital II, L.P.*, 246 A.3d 81, 109 (Del. 2021) ("[A] plaintiff may not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim merely by restating the breach of contract claim as a breach of fiduciary duty." (citation and internal quotation marks omitted)).

impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law." *Id.* The Complaint alleges that Grant unjustly enriched himself by falsely inducing Tsionas to dissociate from the partnership so that he could take an opportunity for himself that otherwise would have been shared among the partners. Compl. ¶¶ 55-59. Fact issues remain as to the precise parameters of the parties' agreement and whether recovery on an unjust enrichment theory is appropriate,[5] but at this early stage, the Complaint states an unjust enrichment claim. The Motion to Dismiss Count IV is DENIED.

7. This Order is a final report pursuant to Court of Chancery Rules 143 and 144. Exceptions to this and all other interlocutory reports in this action are stayed under Court of Chancery Rule 144(f).

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

---

[5] *Compare BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at \*9 (Del. Ch. Feb. 3, 2009) (holding "there [wa]s no independent basis for an unjust enrichment claim because the Amended Complaint contain[ed] no facts challenging [the defendant's] conduct on a basis not comprehensively governed by the [contract]"), *with Breakaway Sols., Inc. v. Morgan Stanley & Co. Inc.*, 2004 WL 1949300 (Del. Ch. Aug. 27, 2004) (explaining that "while 'the existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter,'" "alternative pleading is allowed under both theories" "when there is doubt as to the enforceability or meaning of the terms of the contract in question" (citations, footnotes, and internal quotation marks omitted)), *amended by*, 2005 WL 3488497 (Del. Ch. Dec. 8, 2005).

9