# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| MHS CAPITAL LLC, a Delaware limited liability company, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 2017-0449-SG ) |
| KEITH GOGGIN, MICHAEL GOODWIN, and JOHN COLLINS, | ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| EAST COAST MINER LLC, a Delaware limited liability company, | ) ) ) |
| Nominal Defendant. | ) |

## MEMORANDUM OPINION

Date Submitted: March 5, 2018
Date Decided: May 10, 2018

Philip Trainer, Jr. and Marie M. Degnan, of ASHBY & GEDDES, P.A., Wilmington, Delaware; OF COUNSEL: Stanley S. Arkin, Robert C. Angelillo, and Alex Reisen, of ARKIN SOLBAKKEN LLP, New York, New York, *Attorneys for Plaintiff*.

Gregory V. Varallo and Susan M. Hannigan, of RICHARDS, LAYTON & FINGER, P.A., Wilmington, Delaware; OF COUNSEL: David L. Katsky, Adrienne B. Koch, and Joseph Weiner, of KATSKY KORINS LLP, New York, New York, *Attorneys for Defendants Keith Goggin and Michael Goodwin*.

Michael Busenkell, of GELLERT SCALI BUSENKELL & BROWN LLC, Wilmington, Delaware; OF COUNSEL: Michael T. Leigh, of KAPLAN JOHNSON ABATE & BIRD LLP, Louisville, Kentucky, *Attorneys for Defendant John Collins*.

GLASSCOCK, Vice Chancellor

This matter involves an alleged scheme by which the sole manager of an LLC diverted part ownership of assets of the LLC to interests belonging to himself and his friends. The assets involved were subject to a lien held by the LLC against a bankrupt entity, which lien gave the LLC the right to bid on the assets using its secured interest, rather than cash, as consideration at the bankruptcy sale. According to the Complaint, the manager arranged to have the bankruptcy court transfer the assets, not to the LLC, but to a consortium of entities of which the LLC was only one, with the remainder composed of entities associated with the manager and his cronies. The Plaintiff, a member of the LLC, has sued to vindicate individual or corporate rights under the LLC's operating agreement.

That agreement eschews default common-law fiduciary duties in favor of a rigorous, if less than clear, list of contractual duties, which appears to hold the manager to standards of good faith and ordinary care. Parties to the operating agreement waive the right to seek damages from the manager, except as otherwise required by the LLC Act. The Plaintiff asserts breach of contract and other assorted claims, and seeks damages and equitable relief.

This Memorandum Opinion involves the Defendants'—the manager and his cronies—Motions to Dismiss. The manager, Keith Goggin, seeks dismissal of the contract claim, alleging that recovery of damages against him is precluded by the exculpatory provision in the operating agreement; and that equitable relief is

1

precluded as in violation of the bankruptcy court's orders. I find that equitable relief is not necessarily in conflict with those orders, and that the breach of contract claim survives. All Defendants seek dismissal of the other claims, which I find are either subsumed within the contract claim or fail to state an independent claim under which relief can be granted.

Accordingly, the Defendants' Motions to Dismiss are granted in part and denied in part. My reasoning follows.

## I. BACKGROUND[1]

### A. *Parties*

Plaintiff MHS Capital LLC is a Delaware limited liability company that invests in companies based in the United States.[2] MHS owns a 23.75% stake in Nominal Defendant East Coast Miner LLC ("ECM"), another Delaware limited liability company.[3]

Defendant Keith Goggin is the manager of ECM, and he resides in New York City.[4] Goggin holds an 11.88% interest in ECM.[5]

---

[1] The facts, drawn from the Complaint and from other material I may consider on a motion to dismiss, are presumed true for purposes of evaluating the Motions to Dismiss.
[2] Compl. ¶ 16.
[3] *Id.* ¶¶ 13, 18.
[4] *Id.* ¶¶ 19–20.
[5] *Id.* ¶ 29.

Defendant Michael Goodwin is a member of ECM, in which he holds a 10.69% interest.[6] Goodwin and Goggin are friends.[7] Like Goggin, Goodwin resides in New York City.[8]

Defendant John Collins is another friend of Goggin's, and he is a member of non-party USC Management LLC, which holds a 6.65% stake in ECM.[9] Collins resides in Kentucky.[10]

*B. Factual Background*

1. The Scheme[11]

ECM was formed by investors in U.S. Coal, Inc., a Kentucky-based coal mining company, to buy a senior debt note from U.S. Coal for $21 million.[12] MHS provided $5 million in funding to ECM, representing a 23.75% interest in the company.[13] When ECM purchased the debt note from U.S. Coal, it obtained a security interest in assets owned by the Licking River ("LR") division of U.S. Coal.[14] That security interest gave ECM the right to "credit bid"—that is, to bid with the

---

[6] *Id.* ¶ 30.
[7] *Id.* ¶ 21.
[8] *Id.* ¶ 22.
[9] *Id.* ¶¶ 23, 30. The remainder of ECM is owned by various non-parties. *Id.* ¶ 30.
[10] Collins Aff. ¶ 1.
[11] The Complaint alleges that in February 2012, Goggin hired a lawyer on behalf of ECM, purportedly to represent it in litigation in New York. Compl. ¶¶ 31–32. In fact, Goggin also retained this lawyer to advise him on how to carry out the scheme described below. *Id.* ¶ 33. The Complaint makes clear, however, that it "does not seek to recover any funds that were paid to [the attorney]." *Id.* ¶ 39.
[12] *Id.* ¶ 26.
[13] *Id.* ¶ 27.
[14] *Id.* ¶ 40.

value of the note, instead of cash[15]—for the LR assets if U.S. Coal entered bankruptcy.[16] U.S. Coal ultimately went bankrupt in May 2014.[17]

Goggin, ECM's sole manager, repeatedly told MHS that ECM would receive a majority stake in the "New LR," and that this stake would allow ECM to receive the full value of its secured interest in the LR assets.[18] But Goggin, in fact, had other plans. First, he set up a separate entity named East Coast Miner II ("ECM II").[19] Then, with Goodwin's assistance, he created another entity, Licking River Lenders, which was made up of ECM, ECM II, Goodwin, and Goggin.[20] Of these four entities and individuals, only ECM held the right to credit bid on the LR assets.[21]

When it came time to credit bid on the LR assets, Goggin allowed Licking River Lenders to exercise ECM's credit-bid rights.[22] Thus, because Licking River Lenders—and not, as Goggin had represented, ECM—was the entity that credit bid for the LR assets, ECM was forced to share the proceeds of those assets with ECM II, Goggin, and Goodwin.[23] In effect, Goggin benefited himself, Goodwin, and ECM II by diluting the interest in the LR assets that ECM had expected to receive. MHS,

---

[15] *See In re Phila. Newspapers, LLC*, 599 F.3d 298, 302 n.4 (3d Cir. 2010) ("A credit bid allows a secured lender to bid its debt in lieu of cash.").
[16] Compl. ¶ 40.
[17] *Id.* ¶ 28.
[18] *Id.* ¶ 41.
[19] *Id.* ¶ 46.
[20] *Id.* ¶ 47.
[21] *Id.* ¶ 48.
[22] *Id.* ¶¶ 50–51.
[23] *Id.* ¶ 53.

which held a 23.75% stake in ECM, was "particularly disadvantaged" by Goggin's actions.[24] The scheme was apparently advanced via an April 10, 2015 sale order entered by the United States Bankruptcy Court for the Eastern District of Kentucky.[25] That order authorized the sale of certain LR assets to ECM "and/or" ECM II as the "Credit Bid Purchasers."[26]

In a separate series of transactions, Goggin misappropriated a different set of LR assets.[27] Goggin formed yet another entity, Ember Energy LLC, in which he held an 83% stake, with the remainder belonging to Collins.[28] Goggin then "misappropriated ECM's proprietary and confidential information and trade secrets in order to effect the assignment of . . . separate and additional assets held by LR to Ember."[29] As a result, ECM's interest in the "New LR" was transferred entirely to Ember, and ECM was left with a small share of lease payments pursuant to an agreement between Licking River Lenders and Ember.[30] These allegations, it appears, relate to a second sale order entered by the Bankruptcy Court in Kentucky

---

[24] *Id.* ¶ 56.
[25] Defs. Goggin & Goodwin Opening Br. Ex. 2.
[26] *Id.* at 2–3.
[27] Compl. ¶ 62.
[28] *Id.* ¶¶ 13, 63.
[29] *Id.* ¶ 62.
[30] *Id.* ¶¶ 65–66.

on April 22, 2015.[31]  In that order, the Bankruptcy Court authorized the sale of certain LR assets to Ember.[32]

Collins allegedly plays an active role in Ember's business operations, and he and Goggin purportedly used ECM's confidential and proprietary information in managing Ember.[33]  The material in question includes "information regarding the assets acquired by Ember, the potential returns on such assets and strategies for optimization of the returns from such assets."[34]

### 2. MHS Is Stonewalled, and Goggin Seeks Ratification for His Actions

Goggin has repeatedly rebuffed MHS's attempts to obtain information about its investment in ECM.[35]  Between early 2014 and April 2015, Goggin did not provide MHS with any information about the transactions just described.[36] On March 23, 2015, MHS's attorney sent a letter to ECM's counsel requesting information about the credit bids made by Licking River Lenders, "including the rationale for making [the] bids."[37]  The letter, which MHS styles as a books-and-records demand,[38] also sought clarification as to (i) how ECM decided to approve

---

[31] Defs. Goggin & Goodwin Opening Br. Ex. 3.
[32] *Id.* at 2–3, 8.
[33] Compl. ¶ 69.
[34] *Id.* ¶ 70.
[35] *Id.* ¶ 61.
[36] *Id.* ¶ 57.
[37] *Id.* ¶ 58.
[38] *Id.* ¶ 76.

the bids, (ii) whether ECM gave notice to any ECM members in advance of the bids, and (iii) the planned allocation of assets among the Licking River Lenders members.[39]

On April 1, 2015, ECM's lawyer sent a letter to MHS denying its request for information.[40] About two weeks later, MHS wrote a letter to Goggin to again demand that ECM provide information about its operations; this time, MHS sought, among other things, tax returns, contact information for ECM's members and managers, the minutes of all meetings, business plans and projections, and all contracts involving ECM.[41] The purpose of this request, according to the letter, was to "evaluate the investments of MHS Capital, to inquire into [ECM's] significant expenditures, . . . and to assess the Company's business and financial condition."[42] MHS did not receive any information in response to its request.[43]

On April 9, 2015, Goggin sent a "Consent Package" to MHS.[44] In the Consent Package, Goggin requested a vote on ECM's exercise of its credit-bid rights, though he did not seek approval of the Ember transaction.[45] The Package was sent less than twenty-four hours before the vote was due, and it did not include any financial

---

[39] *Id.* ¶¶ 59–60.
[40] *Id.* ¶ 77.
[41] *Id.* ¶ 78.
[42] *Id.* ¶ 79 (alterations in original).
[43] *Id.* ¶ 80.
[44] *Id.* ¶ 81.
[45] *Id.* ¶¶ 81–82.

information relevant to evaluating any proposed transactions.[46] Goggin additionally asked ECM's members to "ratify [all] actions I [i.e., Goggin] have taken so far on behalf of ECM," though Goggin failed to inform ECM's members of the nature of those actions.[47] MHS did not vote in favor of the proposals contained in the Consent Package, and MHS alleges, on information and belief, that no valid approval was obtained.[48]

### 3. ECM's Operating Agreement

ECM's operating agreement contains two provisions that are particularly relevant to MHS's claims. First, the operating agreement provides that "[t]he Manager [Goggin] shall discharge his . . . duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner [he] reasonably believes to be in the best interests of the Company."[49] Second, the operating agreement provides that "[t]he Manager shall not be liable to the Company [ECM] or any Member [for example, MHS] for

---

[46] *Id.* ¶ 82.

[47] *Id.* ¶ 83 (alterations in original).

[48] *Id.* ¶ 85. The Complaint also alleges that, in August 2017, Goggin sent a letter to ECM's members "declar[ing] that he would make ECM pay lenders of funds for legal defense costs – including funds to be used to pay the legal fees in this action – '12% per annum, compounded monthly' and that all such loans would 'be paid off [by ECM] in full before any distributions are made with respect to the capital accounts of the members' – including MHS." *Id.* ¶ 89. The letter noted that the loans were made in part because Goggin and Goodwin were named as defendants in several of the lawsuits involving ECM. *Id.* ¶ 90.

[49] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss Ex. 1, § 5.6(a).

monetary damages for breach of such person's duty as a Manager, except as otherwise required under the [Delaware LLC] Act."[50]

*C. Procedural History*

On August 26, 2015, MHS and ECM brought suit in New York state court against Goggin, Goodwin, and Collins.[51] The complaint in that action rested on essentially the same allegations as those recounted above.[52] On March 9, 2016, Collins removed the action to the United States District Court for the Southern District of New York.[53] The Defendants then sought to transfer venue to the Bankruptcy Court in Kentucky on the ground that the matter "'arises in' the Title 11 bankruptcy of United States Coal."[54] The court ultimately remanded the matter to New York state court after determining that the relief sought in the plaintiffs' proposed amended complaint would not impact the U.S. Coal bankruptcy estate.[55] Later, on May 1, 2017, the New York state court dismissed the complaint as to Goodwin and Goggin based on the exclusive venue provision contained in the operating agreement, and as to Collins for lack of personal jurisdiction.[56]

---

[50] *Id.* § 5.10.
[51] Defs. Goggin & Goodwin Opening Br. Ex. 4, at 4.
[52] *Id.* at 1–4.
[53] *Id.* at 4.
[54] *MHS Capital v. Goggin*, 193 F. Supp. 3d 304, 305 (S.D.N.Y. 2016).
[55] *Id.* at 305–06.
[56] Defs. Goggin & Goodwin Opening Br. Ex. 4, at 5–17.

MHS commenced the present litigation on June 14, 2017, and amended its Complaint on September 22, 2017. The Complaint contains twelve counts. Count I is brought against Goggin for breach of fiduciary duty.[57] Count II is brought against Goodwin and Collins, and it alleges that they aided and abetted Goggin's breaches of fiduciary duty.[58] Count III alleges that the Defendants conspired to commit breaches of fiduciary duty.[59] Count IV alleges that Goggin committed fraud, Count V asserts that Collins and Goodwin aided and abetted that fraud, and Count VI avers that the Defendants conspired to commit fraud.[60] Count VII alleges that Goggin breached ECM's operating agreement through the conduct described in the Complaint.[61] In Count VIII, MHS asserts that Goggin breached the implied covenant of good faith and fair dealing.[62] Count IX seeks relief for tortious interference with contract against Goodwin and Collins.[63] Count X alleges that the Defendants were unjustly enriched by the conduct set out in the Complaint.[64] In Count XI, MHS alleges that Goggin and Collins misappropriated trade secrets belonging to ECM.[65] Finally, Count XII is a demand for books and records.[66]

---

[57] Compl. ¶¶ 97–103.
[58] *Id.* ¶¶ 104–13.
[59] *Id.* ¶¶ 114–25.
[60] *Id.* ¶¶ 126–57.
[61] *Id.* ¶¶ 158–66.
[62] *Id.* ¶¶ 167–79.
[63] *Id.* ¶¶ 180–86.
[64] *Id.* ¶¶ 187–95.
[65] *Id.* ¶¶ 196–208.
[66] *Id.* ¶¶ 209–14.

The Complaint emphasizes that MHS is not seeking any relief for or on behalf of the bankruptcy estate of U.S. Coal, and that the relief it does seek will not affect any orders issued by the Kentucky Bankruptcy Court.[67] Specifically, MHS seeks money damages and equitable relief, including a constructive trust, disgorgement, restitution, an accounting, and an injunction.[68] MHS also notes that the claims it seeks to bring have never been before the Bankruptcy Court.[69]

The Defendants moved to dismiss the Complaint on October 6, 2017. I heard argument on those Motions on March 5, 2018.

## II. ANALYSIS

The Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6). When reviewing such a motion,

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[70]

I need not, however, "accept conclusory allegations unsupported by specific facts or . . . draw unreasonable inferences in favor of the non-moving party."[71]

---

[67] *E.g.*, *id.* ¶¶ 1–8.
[68] *E.g.*, *id.* ¶ 9.
[69] *Id.* ¶ 7.
[70] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes and internal quotation marks omitted).
[71] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011).

*A. Goggin*

MHS brings nine claims against Goggin: breach of fiduciary duty, conspiracy to commit breach of fiduciary duty, fraud, conspiracy to commit fraud, breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, misappropriation of trade secrets, and a books-and-records demand. The Defendants argue that all of these claims should be dismissed. According to the Defendants, an overarching defect with several of these claims is that Goggin is exculpated from any liability for monetary damages for breaches of his duties as ECM's manager. Moreover, the Defendants argue, MHS cannot get around the exculpation clause by seeking equitable relief, because such relief would interfere with the sale orders entered by the Bankruptcy Court and is in any event barred by judicial estoppel. I first address the question whether MHS is precluded from seeking equitable relief. I then turn to the Defendants' other arguments for dismissal of the claims against Goggin.

## 1. MHS Is Not Precluded from Seeking Equitable Relief

The Complaint emphasizes that MHS does not seek to reverse or modify the sale orders authorizing the transfer of certain LR assets to ECM II and Ember. Instead, MHS seeks (among other things) to disgorge the monetary proceeds received by the Defendants through their misconduct, and to impose a constructive trust over those proceeds. The Defendants nevertheless argue that any equitable

relief granted to MHS would necessarily undermine the sale orders. Those orders specify that the purchasers take title to the assets free and clear of any "encumbrance of any kind."[72] The sale orders also provide that "all persons and entities holding . . . Claims . . . are . . . permanently enjoined from asserting . . . such . . . Claims of any kind and nature" against the purchasers with respect to the assets at issue.[73] In my view, the Defendants' concerns about potential interference with the sale orders do not establish that MHS is precluded as a matter of law from seeking equitable relief.

At the outset, this Court "has broad discretionary power to fashion appropriate equitable relief."[74] The Court may even "depart from strict application of the ordinary forms of relief where circumstances require."[75] Moreover, the availability and scope of equitable remedies are fact-intensive questions that are ill-suited for resolution on a motion to dismiss.[76] Indeed, "on a motion to dismiss all that need be decided is whether a claim is stated upon which any relief could be granted. If that question is answered in the affirmative, the nature of that relief is not relevant and

---

[72] Defs. Goggin & Goodwin Opening Br. Ex. 2, at 5; Defs. Goggin & Goodwin Opening Br. Ex. 3, at 9.

[73] Defs. Goggin & Goodwin Opening Br. Ex. 2, at 6; Defs. Goggin & Goodwin Opening Br. Ex. 3, at 10

[74] *William Penn P'ship v. Saliba*, 13 A.3d 749, 758 (Del. 2011); *see also Cornerstone Brands, Inc. v. O'Steen*, 2006 WL 2788414, at *4 (Del. Ch. Sept. 20, 2006) ("The Court of Chancery has broad discretion to fashion any remedy required by equity.").

[75] *PharmAthene, Inc. v. SIGA Techs., Inc.*, 2011 WL 6392906, at *3 (Del. Ch. Dec. 16, 2011).

[76] *See, e.g.*, *Chaffin v. GNI Grp., Inc.*, 1999 WL 721569, at *7 (Del. Ch. Sept. 3, 1999) ("At this stage, to decide whether rescission relief is (or is not) feasible would not only go beyond the scope of a motion to dismiss, but also would be imprudent, because the issue is fact driven and cannot be decided in the absence of an evidentiary record.").

need not be addressed."[77]  For example, this Court has declined to dismiss an otherwise well-pled claim for promissory or equitable estoppel that rested on a request for rescission which may have been "impossible" to grant.[78]  The Court, citing its broad authority to fashion appropriate relief, reasoned that it did not need to evaluate the effect of any remedial order at the pleading stage.[79]

Here, the Defendants ask me to rule, at the motion to dismiss stage, on the availability of certain forms of equitable relief.  Any such ruling, however, would be premature.  It is not clear to me that the equitable relief MHS seeks would necessarily interfere with the sale orders entered by the Kentucky Bankruptcy Court.  True, those orders assign interests in the LR assets to the purchasers free and clear of any encumbrances, and one of the orders specifies that the proceeds of the assets in question shall be distributed "subject to order of the Court after notice and a hearing."[80]  But once the Bankruptcy Court has finalized the distribution of the LR assets, it may be possible to equitably attach their proceeds without running afoul of anything contained in the sale orders.  Whether that is so depends in part on the scope of the relief—if any—I ultimately grant in this action.  That is a fact-intensive question that cannot be resolved at the pleading stage.  Of course, discovery may

---

[77] *Id.*

[78] *O'Steen*, 2006 WL 2788414, at *3–4.

[79] *Id.* at *4; *see also Microsoft Corp. v. Amphus, Inc.*, 2013 WL 5899003, at *20 (Del. Ch. Oct. 31, 2013) (declining to rule that rescission was not available at the pleading stage even though the plaintiff would "face an uphill battle" in establishing one of the predicates for that remedy).

[80] Defs. Goggin & Goodwin Opening Br. Ex. 2, at 4.

reveal that any form of equitable relief sought by MHS would necessarily and impermissibly modify the sale orders. In that case, Goggin may raise the issue via a motion for summary judgment or at trial. At the pleading stage, however, I cannot rule out the possibility that MHS may be entitled to forms of equitable relief that would not derogate the sale orders.

The Defendants also argue that MHS is judicially estopped from seeking equitable relief. In opposing transfer to the Kentucky Bankruptcy Court, MHS and ECM argued to the District Court that the relief they sought would not affect the U.S. Coal bankruptcy estate.[81] MHS and ECM explained that they

> seek monetary damages against the manager of ECM, defendant Goggin, who, through fraud and breaches of fiduciary duty owed to MHS and ECM, and with assistance of the other defendants, usurped an opportunity belonging to plaintiff ECM, thereby causing monetary damages to both ECM and MHS. This case does not require the interpretation or enforcement of any of the Bankruptcy Court's orders.[82]

The District Court agreed with MHS and ECM, denying the motion to transfer on the ground that the plaintiffs "do not seek damages or other relief from the bankruptcy estate or reversal, overruling, or modification of the Bankruptcy Court sale order."[83] In my view, these representations, along with the District Court's ruling, do not estop MHS from seeking equitable relief.

---

[81] Defs. Goggin & Goodwin Opening Br. Ex. 5, at 1.

[82] *Id.*

[83] *Goggin*, 193 F. Supp. 3d at 305.

15

"Judicial estoppel acts to preclude a party from asserting a position inconsistent with a position previously taken in the same or earlier legal proceeding."[84]  The doctrine is designed to "protect the integrity of the judicial proceedings."[85]  "Judicial estoppel operates only where the litigant's [position] contradicts another position that the litigant previously took and that the Court was successfully induced to adopt in a judicial ruling."[86]  Three factors bear on the judicial estoppel analysis:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment if not estopped.[87]

"Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits."[88]

Here, MHS's request for equitable relief is not "clearly inconsistent" with the position it took before the District Court.  MHS never told the District Court that it would not seek equitable relief against the Defendants.  Instead, MHS and ECM

---

[84] *Motorola Inc. v. Amkor Tech., Inc.*, 958 A.2d 852, 859 (Del. 2008).

[85] *Id.*

[86] *Id.* at 859–60 (internal quotation marks, alterations, and citation omitted).

[87] *Whittington v. Dragon Grp. L.L.C.*, 2011 WL 1457455, at *9 (Del. Ch. Apr. 15, 2011) (alteration in original) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001)).

[88] 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4477 (2d ed. 2018).

16

assured the District Court that the relief they sought would not derogate the sale orders entered by the Bankruptcy Court. MHS and ECM tried to support their position by pointing out that they sought monetary damages against Goggin, but that is not tantamount to a representation that MHS would never seek equitable relief against him or his purported co-conspirators. Tellingly, the District Court relied on MHS's representations to find that (i) MHS does not seek damages from the U.S. Coal bankruptcy estate, and (ii) MHS does not seek "reversal, overruling or modification" of the Bankruptcy Court's orders.[89] Those findings are not incompatible with MHS's position here.

The Defendants' argument might have more force if it were beyond dispute that equitable relief would undermine the sale orders. If that were the case, a representation, relied on by the District Court, that the requested relief would not derogate those orders would tend to raise an estoppel. But, for the reasons discussed above, it is not clear to me that equitable relief here would conflict with the sale orders. Thus, judicial estoppel does not bar MHS from seeking equitable remedies.

The Defendants argue that this case is on all fours with *Nutzz.com, LLC v. Vertrue Inc.*[90] I disagree. In that case, the plaintiff explicitly asserted that several of its claims were not subject to an arbitration clause.[91] The Court relied on that

---

[89] *Goggin*, 193 F. Supp. 3d at 305.
[90] 2006 WL 2220971 (Del. Ch. July 25, 2006).
[91] *Id.* at *10.

17

representation in ruling on the plaintiff's motion for a preliminary injunction.[92] The

plaintiff later attempted to argue that similar claims in fact *belonged in arbitration*.[93]

The Court rejected that argument as barred by judicial estoppel.[94] In effect, the Court

explained, the plaintiff sought to "walk away from an argument it previously

convinced th[e] Court to adopt."[95] Here, by contrast, MHS has not taken the type of

directly conflicting positions that troubled the Court in *Nutzz.com*. If the District

Court had relied on a promise by MHS that it would not seek equitable relief,

*Nutzz.com* would be on point. But that is not what MHS said, or what the District

Court did. Thus, *Nutzz.com*[96] does not help the Defendants.

MHS also seeks monetary damages for breach of contract against Goggin, and

argues that the operating agreement's exculpatory clause does not prevent an award

of damages for actions of the manager taken in bad faith. I have held that MHS is

not barred from seeking equitable relief. Apart from the question of remedies, the

Defendants do not argue that the Complaint fails to state a claim based on Goggin's

alleged breach of the duties imposed by ECM's operating agreement. Thus, because

I may assume that the Complaint states a claim against Goggin for breach of contract,

and because I have found that equitable relief is not necessarily precluded with

---

[92] *Id.*
[93] *Id* (emphasis added).
[94] *Id.*
[95] *Id.*
[96] There is not a single pun in this Memorandum Opinion, and I intend to keep it that way.

18

respect to that claim, I need not decide whether the exculpatory provision bars MHS's request for monetary damages against Goggin.[97] Moreover, at this stage of the litigation, I need not decide whether MHS's request for some forms of equitable relief is so close to a request for monetary damages that it runs afoul of the exculpatory provision. Finally, the way the operating agreement's "Manager" standard of care—good faith and ordinary care—is meant to work with the exculpatory clause, which purports to eliminate all damages, is unclear to me. These issues all await a developed record.

## 2. Breach of Fiduciary Duty

The Defendants seek dismissal of the fiduciary duty count on the ground that it is duplicative of the breach of contract count. The Complaint alleges that Goggin breached his fiduciary duties by failing to act in the best interests of ECM. Specifically, Goggin usurped business opportunities belonging to ECM, stonewalled MHS when it sought information about its investment, improperly sought ratification for his actions from ECM's members, and "impair[ed] ECM's assets to pay his . . . personal legal defense fees."[98] The Complaint also alleges that Goggin

---

[97] *See, e.g.*, *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 991 (Del. Ch. 2000) ("In response to a motion to dismiss, I simply determine whether plaintiff has stated a claim for which relief might be granted. If I find that plaintiffs have stated cognizable claims, then 'the nature of that relief is not relevant and need not be addressed.' Because the determination of relief is beyond the scope of this motion and premature without an established evidentiary record, I will not address this issue." (footnotes omitted) (quoting *Chaffin*, 1999 WL 721569, at *7)).
[98] Compl. ¶ 88.

breached the operating agreement.  MHS points to Section 5.6(a) of the agreement, which provides that Goggin "shall discharge his . . . duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner [he] reasonably believes to be in the best interests of the Company."[99]  According to MHS, Goggin breached these obligations through the conduct just described—that is, his usurpation of business opportunities and his other purportedly disloyal actions.[100]  Notably, MHS seeks the same relief for its fiduciary duty and breach of contract counts.[101]

Delaware law is clear that fiduciary duty claims may not proceed in tandem with breach of contract claims absent an "independent basis for the fiduciary duty claims apart from the contractual claims."[102]  This rule stems from "the primacy of contract law over fiduciary law" in this state.[103]  Thus, "where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim."[104]  "In that specific context, any fiduciary claims arising out of the same facts that underlie the contract obligations would be foreclosed as superfluous."[105]  A fiduciary duty claim cannot proceed in parallel with a breach of

---

[99] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss Ex. 1, § 5.6(a).

[100] Pl.'s Answering Brief in Opp'n to Goggin & Goodwin's Mot. to Dismiss 33–35.

[101] Compl. ¶¶ 112–13, 165–66.

[102] *Renco Grp., Inc. v. MacAndrews AMG Holdings LLC*, 2015 WL 394011, at *7 (Del. Ch. Jan. 29, 2015) (internal quotation marks and citation omitted).

[103] *Stewart v. BF Bolthouse Holdco, LLC*, 2013 WL 5210220, at *12 (Del. Ch. Aug. 30, 2013).

[104] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

[105] *Id.*

contract claim unless the former "depend[s] on additional facts . . . , [is] broader in scope, and involve[s] different considerations in terms of a potential remedy."[106]

MHS's breach of fiduciary duty claim is duplicative of its breach of contract claim and must be dismissed. Goggin's obligations as ECM's manager are defined in Section 5.6(a) of the operating agreement, which requires him to act in good faith, with ordinary care, and in the best interests of the company. All of the conduct that could conceivably form the basis of a fiduciary duty claim—for instance, Goggin's usurpation of ECM's business opportunities, and his use of company money to pay personal legal expenses—is clearly covered by the duties spelled out in the operating agreement. Moreover, MHS seeks identical remedies with respect to the fiduciary duty and breach of contract claims. Thus, there is no "independent basis for the fiduciary duty claim[] apart from the contractual claim[]."[107]

MHS tries to salvage its fiduciary duty count by pointing to conduct that potentially constitutes a breach of contract but does not form part of the fiduciary duty allegations. For example, the Complaint alleges that Goggin breached the contractual requirements that "each member of ECM . . . be entitled to vote in proportion to the percentage interest [it] own[s]" and that "a 75% supermajority

[106] *Renco Grp., Inc.*, 2015 WL 394011, at *7 (internal quotation marks, alterations, and citation omitted).
[107] *Id.*

21

vote" be obtained for major decisions.[108]   Even if MHS is correct that these contractual breaches do not also involve a breach of fiduciary duty, that does not establish an independent basis for the fiduciary duty count.  Indeed, MHS gets the analysis required precisely backwards.  The question is whether "there is some harm to be remedied through the lens of fiduciary duty which cannot be adequately compensated through enforcement of the contract."[109]   Obviously, conduct that constitutes a breach of contract (and not a breach of fiduciary duty) can be remedied through a breach of contract claim.  MHS has failed to point to any conduct that would constitute a breach of fiduciary duty and would not also form the basis of a claim for breach of contract.  Thus, the fiduciary duty count is duplicative and must be dismissed.[110]

### 3. Fraud

MHS alleges that Goggin committed fraud when, "[o]ver the course of many months, [he] repeatedly represented to [MHS] that he was arranging for ECM to use its credit bid right to get the full value of its secured interest in [U.S. Coal's]

---

[108] Compl. ¶¶ 162–63.

[109] *Matthew v. Laudamiel*, 2014 WL 5904716, at *2 (Del. Ch. Nov. 12, 2014).

[110] Because the Complaint fails to state a claim for breach of fiduciary duty, the corresponding counts for conspiracy to commit breach of fiduciary duty and aiding and abetting breach of fiduciary duty must be dismissed as well.  *See, e.g.*, *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 215 (Del. Ch. 2006) (dismissing claims for conspiracy to breach fiduciary duty and aiding and abetting breach of fiduciary duty because the complaint failed to state a claim for breach of fiduciary duty), *aff'd sub nom. Trenwick Am. Litig. Trust v. Billett*, 931 A.2d 438 (Del. 2007).

22

assets."[111] MHS similarly alleges that "[a]t all times, Goggin represented to [MHS] that he was working on a deal by which ECM would get a majority share in the 'New LR,' and the full value of its secured interest in the LR assets."[112] As discussed above, these representations turned out to be false. MHS further alleges that Goggin failed to disclose his plan to usurp business opportunities from ECM. Notably, MHS clarifies in its opposition brief that the purported misrepresentations and omissions took place at some point between 2009, when MHS invested in ECM, and April 2015, when the Bankruptcy Court sale orders were entered.[113] These allegations fail to plead fraud with the particularity required to survive a motion to dismiss. Moreover, MHS has failed to adequately allege reliance, and its fraud claim is an impermissible bootstrap of its breach of contract claim.

To state a claim for fraud, a plaintiff must allege that "(1) the defendant falsely represented or omitted facts that the defendant had a duty to disclose; (2) the defendant knew or believed that the representation was false or made the representation with a reckless indifference to the truth; (3) the defendant intended to induce the plaintiff to act or refrain from acting; (4) the plaintiff acted in justifiable

---

[111] Compl. ¶ 129.
[112] *Id.* ¶ 41.
[113] Pl.'s Answering Brief in Opp'n to Goggin & Goodwin's Mot. to Dismiss 38 ("With respect to the dates of these representations and the ongoing omissions, it is implicit in the pleading that they took place during the period after MHS's investment in 2009, but prior to Defendants' exercise of the credit bid rights and the Ember transaction, which took place on April 22, 2015 – a fact about which the Defendants were obviously aware and about which this Court can take judicial notice.").

reliance on the representation; and (5) the plaintiff was injured by its reliance."[114]
"In addition to arising from overt misrepresentations, fraud also may occur through deliberate concealment of material facts, or by silence in the face of a duty to speak."[115]

Court of Chancery Rule 9(b) requires a plaintiff to plead fraud with particularity.[116] To satisfy Rule 9(b), the plaintiff must allege "(1) the time, place, and contents of the false representation [or omission]; (2) the identity of the person making the representation [or omission]; and (3) what the person intended to gain by making the representations [or omissions]."[117] A plaintiff need not plead knowledge or state of mind with particularity, because "any attempt to require specificity in pleading a condition of mind would be unworkable and undesirable."[118] The purpose of Rule 9(b) is to provide the defendant with "detail sufficient to apprise [her] of the basis for the claim."[119]

MHS's fraud claim fails to comply with the particularity requirement of Rule 9(b). The Complaint does not provide enough specificity as to when the false representations and omissions were made. Rule 9(b) is not satisfied by the allegation

---

[114] *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1050 (Del. Ch. 2006).

[115] *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 773–74 (Del. Ch. 2014).

[116] Ct. Ch. R. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").

[117] *Abry Partners V, L.P.*, 891 A.2d at 1050.

[118] *Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1208 (Del. 1993) (citation omitted).

[119] *Abry Partners V, L.P.*, 891 A.2d at 1050.

24

that, at some unspecified time between MHS's investment in 2009 and the usurpation of business opportunities in April 2015, Goggin made false representations and omitted material facts.[120]  Indeed, that allegation "is the functional equivalent to providing no time parameter at all because the misrepresentations logically could not have occurred during any other period of time."[121]  Moreover, a years-long time frame such as the one offered by MHS cannot possibly give Goggin enough information "to apprise [him] of the basis for the claim."[122]  Thus, because MHS has failed to allege fraud with enough particularity to satisfy Rule 9(b), its fraud claim must be dismissed.

MHS's primary response to this pleading deficiency is that Rule 9(b) should not apply to its fraud claim because the information underlying that claim lies in the Defendants' possession.  Relatedly, MHS contends that it cannot be expected to satisfy Rule 9(b) absent discovery.  MHS is correct that this Court has required less particularity from plaintiffs alleging fraud "when the facts lie more in the knowledge

---

[120] Federal courts applying the analogous Federal Rule of Civil Procedure 9(b) have held that alleging a time frame of six or more months is insufficient to satisfy the particularity requirement. *See, e.g.*, *Hatteras Enters. Inc. v. Forsythe Cosmetic Grp., Ltd.*, 2018 WL 1935984, at *11 (E.D.N.Y. Apr. 23, 2018) ("[I]t is insufficient to state that the misrepresentations occurred over a six to seven month period." (collecting cases)); *McCann v. Jupina*, 2017 WL 1540719, at *2 (N.D. Cal. Apr. 28, 2017) ("[C]ourts have held that a nine-month window is not sufficiently narrow to satisfy Rule 9(b)." (collecting cases)).
[121] *Fortis Advisors LLC v. Dialog Semiconductor PLC*, 2015 WL 401371, at *7 (Del. Ch. Jan. 30, 2015).
[122] *Abry Partners V, L.P.*, 891 A.2d at 1050.

of the opposing party than of the pleading party."[123]  But that rule does not apply here.  Generally speaking, "[t]he lack of prior discovery poses no impediment to a plaintiff's ability to plead 'the circumstances constituting fraud.'  After all, the plaintiff was there."[124]  If Goggin in fact lied to (or concealed material information from) MHS, on which MHS relied to change position to its detriment, MHS ought to be able to plead when those lies or omissions took place with far more specificity than its Complaint displays.[125]  Contrary to MHS's suggestion, the fact of when those events occurred is not solely in the Defendants' possession.  I reject MHS's attempt to sidestep the strictures of Rule 9(b).[126]

Setting aside MHS's failure to comply with Rule 9(b), I note that the nature of its fraud claim remains unclear to me.  MHS alleges that the fraud began after its

---

[123] *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 146 (Del. Ch. 2003).

[124] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 142 (Del. Ch. 2009); *see also Crescent/Mach I Partners, L.P.*, 846 A.2d at 988–89 ("I note that the plaintiffs argue that they cannot sufficiently articulate their fraud-based claims without seeking discovery from the defendants, who allegedly possess the information forming the basis for their claim. For me to permit this kind of conclusory allegation in the absence of any particularized facts is contrary to the limitations of Rule 9(b). Moreover, plaintiffs' suggestion that their allegations cannot be fully articulated in the absence of discovery belies the fraud-based pleading standard. I know of no Delaware precedent that permits a conclusory allegation to proceed on the basis that later discovery will fill in the purported gaps if only the pleading is allowed to survive a motion to dismiss.").

[125] *Cf. Aronov v. Mersini*, 2015 WL 1780164, at *4 (S.D.N.Y. Apr. 20, 2015) ("The identity of the speaker and the location from which the calls were placed may be only known to defendants; however, the dates on which [the defendants] placed the calls and the content of the alleged misrepresentations are known to the customers who received these calls.").

[126] Because MHS's fraud claim fails, its claims for aiding and abetting and conspiracy to commit fraud must be dismissed as well.  *See, e.g.*, *Airborne Health, Inc. v. Squid Soap, LP*, 2010 WL 2836391, at *10 (Del. Ch. July 20, 2010) ("Lacking an underlying wrong, [the plaintiff's] claims against [the defendant] for aiding and abetting and conspiracy likewise fail.").

26

investment in ECM. How, then, did MHS rely on Goggin's purported misrepresentations and omissions? MHS offers the conclusory allegation that it "believed [Goggin's] statements and omissions to be true and w[as] deceived, and justifiably acted in reliance on them and w[as] damaged thereby."[127] But MHS never explains what it did in reliance on these misrepresentations and omissions.[128] Indeed, given that MHS had already invested in ECM before the fraud began, it is hard to see how it could successfully plead reliance. Perhaps MHS would have taken steps to protect its rights if it had learned of Goggin's scheme before the sale orders were entered. But those steps presumably would have culminated in filing a lawsuit against Goggin—which is precisely what MHS has done here.[129] In any event,

---

[127] Compl. ¶ 137. Such an allegation, standing alone, is insufficient to plead reliance. *See, e.g.*, *Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 159 (Del. Ch. 2003) (dismissing a fraud claim because, among other things, the plaintiffs offered only "[t]he conclusory allegation that 'Plaintiffs were in fact deceived by the acts, omissions and conduct described in this complaint and relied thereon to their detriment'"); *Smith v. Smitty McGee's, Inc.*, 1998 WL 246681, at *5 (Del. Ch. May 8, 1998) ("One obvious defect in plaintiff's allegation is the statement that he 'relied upon' Rick McGee's statement. This conclusory statement is insufficient; to plead reliance with particularity, plaintiff must explain what he did, or refrained from doing, in justifiable reliance upon the statement.").

[128] In opposing Goggin and Goodwin's Motion to Dismiss, MHS points out that it alleges "MHS relied on and was damaged by the[] misstatements and omissions." Pl.'s Answering Brief in Opp'n to Goggin & Goodwin's Mot. to Dismiss 38. But that simply restates the Complaint's conclusory allegation that MHS relied to its detriment on Goggin's lies and omissions.

[129] *Cf. Touch of It. Salumeria & Pasticceria, LLC v. Bascio*, 2014 WL 108895, at *5 (Del. Ch. Jan. 13, 2014) ("In fact, at oral argument, the Plaintiffs' counsel disclosed that, absent any misrepresentation, the Plaintiffs would have done precisely what they ultimately did here; bring suit to vindicate what they believe to be their rights under the Amended LLC Agreement. As such, the Plaintiffs are not able to plead reliance or resulting damages.").

27

MHS's failure to offer any non-conclusory allegations regarding reliance provides an independent basis for dismissing its fraud claim.

Moreover, although the Defendants do not raise the issue, MHS's fraud claim runs afoul of the well-established principle that "a plaintiff cannot 'bootstrap' a claim of breach of contract into a claim of fraud merely by alleging that a contracting party never intended to perform its obligations."[130]  In other words, a plaintiff cannot state a fraud claim "merely by intoning the *prima facie* elements of the tort while telling the story of the defendant's failure to perform under the contract."[131]  Here, MHS's fraud count boils down to the assertion that, after MHS made its investment, Goggin either (i) failed to inform it that he intended to breach the operating agreement, or (ii) falsely represented that he would perform his obligations under the agreement.  That is "exactly the type of bootstrapping this Court will not entertain."[132]  MHS's fraud claim thus suffers from several deficiencies, each of which independently compels dismissal.

---

[130] *Narrowstep, Inc. v. Onstream Media Corp.*, 2010 WL 5422405, at *15 (Del. Ch. Dec. 22, 2010) (internal quotation marks and citation omitted).

[131] *Cornell Glasgow, LLC v. La Grange Props., LLC*, 2012 WL 2106945, at *8 (Del. Super. June 6, 2012) (Slights, J.).

[132] *BAE Sys. N. Am. Inc. v. Lockheed Martin Corp.*, 2004 WL 1739522, at *8 (Del. Ch. Aug. 3, 2004); *see also Bean v. Fursa Capital Parners, LP*, 2013 WL 755792, at *4 (Del. Ch. Feb. 28, 2013) ("[T]o the extent [the fraud count] relates to representations made at the time of the LPA, the allegations in the Complaint do not support Plaintiff's argument that his fraud claim is broader than his breach of contract claim. The alleged misrepresentation is that Defendants knew they would not deliver audited annual financial statements. But, the failure to deliver such statements is what forms the basis of Bean's breach of contract claims."); *Cornell Glasgow, LLC*, 2012 WL 2106945, at *8 ("[E]ven if the defendants never intended to perform, their alleged scheme to breach the Development Agreement simply cannot give rise to an actionable claim for fraud or

4. <u>The Implied Covenant of Good Faith and Fair Dealing</u>

MHS alleges that Goggin breached the implied covenant of good faith and fair dealing. According to MHS, the ECM operating agreement implicitly required Goggin to refrain from usurping ECM's business opportunities and using ECM funds to pay his and Goodwin's personal legal expenses. The Defendants argue that these allegations fail to state a claim for breach of the implied covenant. I agree.[133]

Because a claim for breach of the implied covenant is contractual, "the elements of an implied covenant claim are those of a breach of contract claim: 'a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff.'"[134] Applying the implied covenant is a "cautious enterprise,"[135] and the doctrine is "rarely invoked successfully."[136] The implied covenant applies only when one party "proves that the other party has acted

negligent misrepresentation."); *Pinkert v. John J. Oliveri, P.A.*, 2001 WL 641737, at *5 (D. Del. May 24, 2001) ("Plaintiffs allege that the Brosnahan defendants: (1) contracted to perform construction services; (2) failed to perform the services in the manner called for by the Construction Contract; and (3) submitted payment applications indicating the services had been performed according to the Construction Contract. The gravamen of plaintiffs' common law fraud . . . claim[] is that the Brosnahan defendants knowingly misrepresented the nature of their work each time they submitted an Application and Certification for Payment. These alleged misrepresentations were not collateral to the Construction Contract, but rather memorialized as some of the Brosnahan defendants' principal obligations under their agreement with plaintiffs.").

[133] Because MHS has failed to state a claim for breach of the implied covenant, I need not address the Defendants' argument that Section 18-1101(e) of the LLC Act distinguishes between "bad faith" violations of the implied covenant and violations of the implied covenant that are not committed in bad faith.

[134] *NAMA Holdings, LLC v. Related WMC LLC*, 2014 WL 6436647, at *16 (Del. Ch. Nov. 17, 2014) (quoting *Fitzgerald v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998)).

[135] *Nemec*, 991 A.2d at 1125.

[136] *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 888 (Del. Ch. 2009).

arbitrarily or unreasonably, thereby frustrating the fruits of the bargain that the asserting party reasonably expected."[137]   A party's reasonable expectations are measured as of the time of contracting,[138] and any implied terms must address "developments or contractual gaps that the asserting party pleads neither party anticipated."[139]   The Court will not rewrite a contract simply because a party now wishes it had gotten a better deal.[140]   Moreover, the implied covenant does not "establish a free-floating requirement that a party act in some morally commendable sense."[141]   Instead, "good faith" in the implied covenant context entails "faithfulness to the scope, purpose, and terms of the parties' contract."[142]   Similarly, "fair dealing" here does not imply equitable behavior.  The term "fair" is something of a misnomer here; it simply means actions consonant "with the terms of the parties' agreement and its purpose."[143]   Put differently, any implied obligation "must be consistent with the terms of the agreement as a whole."[144]

---

[137] *Nemec*, 991 A.2d at 1126.
[138] *Id.*
[139] *Id.* at 1125.
[140] *Id.* at 1126.
[141] *Allen v. El Paso Pipeline GP Co., L.L.C.*, 2014 WL 2819005, at *10 (Del. Ch. June 20, 2014), *aff'd*, 2015 WL 803053 (Del. Feb. 26, 2015).
[142] *Gerber v. Enter. Prods. Holdings, LLC*, 67 A.3d 400, 419 (Del. 2013) (emphasis omitted), *overruled on other grounds by Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808 (Del. 2013).
[143] *Id.*
[144] *Airborne Health, Inc.*, 984 A.2d at 146.

It follows that the first step in evaluating an implied covenant claim is to determine whether the contract in fact contains a gap that must be filled.[145]  That is because the implied covenant applies only if the contract is silent as to the subject at issue.[146]  If the contract directly addresses the matter at hand, "[e]xisting contract terms control . . . such that implied good faith cannot be used to circumvent the parties' bargain."[147]  If, on the other hand, the express terms of the contract do not address the subject at issue, the Court must then consider whether implied contractual terms fill the gap.[148]  The Court conducts that inquiry by asking "whether it is clear from what was expressly agreed upon that the parties who negotiated the express terms of the contract would have agreed to proscribe the act later complained of as a breach of the implied covenant of good faith—had they thought to negotiate with respect to that matter."[149]  The Court does not derive implied obligations from its own notions of justice or fairness.[150]  Instead, it asks what the parties themselves would have agreed to "had they considered the issue in their original bargaining

---

[145] *Allen*, 2014 WL 2819005, at *10 (citing Mohsen Manesh, *Express Contract Terms and the Implied Contractual Covenant of Delaware Law*, 38 Del. J. Corp. L. 1, 19 (2013)).

[146] *E.g.*, *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1032 (Del. Ch. 2006).

[147] *Dunlap v. State Farm Fire & Cas. Co.*, 878 A.2d 434, 441 (Del. 2005); *see also Shenandoah Life Ins. Co. v. Valero Energy Corp.*, 1988 WL 63491, at *8 (Del. Ch. June 21, 1988) ("Where . . . a specific, negotiated provision directly treats the subject of the alleged wrong and has been found to have not been violated, it is quite unlikely that a court will find by implication a contractual obligation of a different kind that has been breached.").

[148] *NAMA Holdings, LLC*, 2014 WL 6436647, at *16.

[149] *Katz v. Oak Indus., Inc.*, 508 A.2d 873, 880 (Del. Ch. 1986).

[150] *NAMA Holdings, LLC*, 2014 WL 6436647, at *17.

positions at the time of contracting."[151]  The implied covenant therefore "operates only in that narrow band of cases where the contract as a whole speaks sufficiently to suggest an obligation and point to a result, but does not speak directly enough to provide an explicit answer."[152]

With these precepts in mind, I find that MHS's implied covenant claim fails because it rests entirely on conduct explicitly addressed by ECM's operating agreement.  MHS asks me to read into the agreement implicit promises on Goggin's part to refrain from usurping ECM's business opportunities and using ECM assets to pay personal legal expenses.  But there is no need to read these promises into the agreement, for they are already there.  Section 5.6(a) of the operating agreement provides that Goggin, as ECM's manager, "shall discharge his . . . duties in good faith, with the care an ordinarily prudent person in a like position would exercise under similar circumstances, and in a manner [he] reasonably believes to be in the best interests of the Company."[153]  These contractual duties cover the allegations on which MHS's implied covenant claim is premised. Specifically, Goggin's purported theft of ECM's business opportunities constitutes a breach of his contractual obligation to act in good faith and in a manner he "reasonably believes to be in the

---

[151] *Gerber*, 67 A.3d at 418.
[152] *Airborne Health, Inc.*, 984 A.2d at 146.
[153] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss Ex. 1, § 5.6(a).

best interests of the Company,"[154] and the same is true for Goggin's decision to use ECM funds to pay personal legal fees. Because there is no gap in the operating agreement to be filled by implied contractual terms,[155] the Complaint fails to state a claim for breach of the implied covenant.[156]

### 5. Unjust Enrichment

MHS asserts that the Defendants were unjustly enriched by the misconduct described in the Complaint. Specifically, MHS alleges that the Defendants were enriched at MHS's expense when they received "the value of the property, benefits, and opportunities [they] wrongfully obtained."[157] According to the Defendants, the unjust enrichment claim is barred by the operating agreement, which exclusively governs the parties' relationship. I agree with the Defendants that the unjust enrichment claim must be dismissed.

---

[154] *Id.*

[155] Notably, the Complaint does not allege that the implied covenant applies in connection with the parties' adoption of the exculpation clause, which arguably eliminates recovery of money damages against Goggin here, regardless of his violation of his contractual duty of good faith.

[156] *See, e.g.*, *Haney v. Blackhawk Network Holdings, Inc.*, 2016 WL 769595, at *9 (Del. Ch. Feb. 26, 2016) ("Where a plaintiff has failed to identify a gap in the contract, merely repeating the defendant's allegedly improper acts or omissions already the subject of a separate breach of contract claim is insufficient to support a claim for breach of the implied covenant of good faith and fair dealing."); *Fortis Advisors LLC*, 2015 WL 401371, at *5 (dismissing an implied covenant claim because, "[i]nstead of identifying any contractual gap or term to be implied, [the plaintiff] mimicks [*sic*] the language of its contract claim to argue that the same six alleged actions and failures cited as evidence of [the defendant's] alleged breach of Section 3.04 of the Merger Agreement were contrary to the parties' intent in the Merger Agreement").

[157] Compl. ¶ 191.

"Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[158] "The elements of unjust enrichment are: (1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[159] In evaluating an unjust enrichment claim, I first determine "whether a contract already governs the relevant relationship between the parties."[160] "If the contract is the measure of the plaintiff's right, 'there can be no recovery under an unjust enrichment theory independent of it.'"[161] "This is the case even when the . . . contract gives rise to a fiduciary relationship between the parties."[162]

MHS's unjust enrichment claim must be dismissed because MHS's rights in this action are governed entirely by the ECM operating agreement. The crux of the Complaint is that Goggin, with the assistance of Goodwin and Collins, acted

---

[158] *Nemec*, 991 A.2d at 1130 (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

[159] *Id.*

[160] *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *7 (Del. Ch. Feb. 3, 2009).

[161] *Dietrichson v. Knott*, 2017 WL 1400552, at *6 (Del. Ch. Apr. 19, 2017) (quoting *Kuroda*, 971 A.2d at 891). There is an exception to this general principle: "The contract itself is not necessarily the measure of [the] plaintiff's right where the claim is premised on an allegation that the contract arose from wrongdoing (such as breach of fiduciary duty or fraud) or mistake and the [defendant] has been unjustly enriched by the benefits flowing from the contract." Donald J. Wolfe, Jr. & Michael A. Pittenger, *Corporate and Commercial Practice in the Delaware Court of Chancery* § 12.01[b] (2016) (citing *McPadden v. Sidhu*, 964 A.2d 1262, 1276 (Del. Ch. 2008)). But MHS does not argue that this exception applies here.

[162] *Bakerman v. Sidney Frank Importing Co., Inc.*, 2006 WL 3927242, at *18 (Del. Ch. Oct. 10, 2006).

34

disloyally toward ECM and MHS. As noted above, that disloyalty is covered by Section 5.6(a) of the operating agreement, which imposes contractual fiduciary obligations on Goggin. Thus, any enrichment stems entirely from Goggin's contractual breaches and the benefits the Defendants received from them. Notably, MHS has failed to cite a single allegation in the Complaint that falls outside the purview of the operating agreement. For example, MHS points to Goggin's use of ECM funds to pay "profoundly outrageous and unjustifiable fees" to an attorney who represented his interests rather than ECM's.[163] But that conduct is squarely addressed by Goggin's contractual duty to act in good faith and in a manner "[he] reasonably believes to be in the best interests of the Company."[164] Because MHS's rights vis-à-vis the Defendants stem entirely from the ECM operating agreement, MHS's unjust enrichment claim fails.[165]

---

[163] Compl. ¶ 14.

[164] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss Ex. 1, § 5.6(a).

[165] The duties allegedly breached in this case belonged to Goggin, not Goodwin. That, however, does not save the unjust enrichment claim as to Goodwin. *See, e.g.*, *CIM Urban Lending GP, LLC v. Cantor Commercial Real Estate Sponsor, L.P.*, 2016 WL 768904, at *2 (Del. Ch. Feb. 26, 2016) ("[W]hen the standard is set by contract, 'contractual remedies remain the sole remedies even if the claim of unjust enrichment is alleged against a party who is not a party to the contract.'" (quoting *AM Gen. Holdings LLC v. Renco Grp., Inc.*, 2013 WL 5863010, at *15 (Del. Ch. Oct. 31, 2013))).

35

In other words, MHS, having bargained for certain contractual rights against Goggin, and for certain remedies, cannot use equity to circumvent the results of its bargain.[166]

### 6. Misappropriation of Trade Secrets

According to MHS, Goggin and Collins misappropriated ECM's trade secrets and used them to benefit themselves. The Complaint's description of the purported trade secrets is threadbare. MHS alleges that Goggin and Collins stole "material information regarding the assets acquired by Ember and [Licking River Lenders], including but not limited to information regarding the potential returns on such assets and strategies for optimization of the returns from such assets."[167] MHS also alleges—without any supporting factual detail—that "ECM made efforts to maintain the secrecy of the [confidential] [i]nformation, and these efforts were reasonable under the circumstances."[168] The Defendants are correct that these allegations fall short of stating a claim for misappropriation of trade secrets.

Under the Delaware Uniform Trade Secrets Act ("DUTSA"), a plaintiff "may obtain injunctive relief and damages against one who acquires, uses or discloses a trade secret obtained through improper means."[169] To plead a claim for trade secret

---

[166] I note that the unjust enrichment claim is not brought against the entities allegedly holding purloined assets; those entities are not party defendants.
[167] Compl. ¶ 198.
[168] *Id.* ¶ 199.
[169] *Savor, Inc.*, 812 A.2d at 897.

36

misappropriation, a plaintiff must allege that "(1) a trade secret exists; (2) the plaintiff communicated the secret to the defendant; (3) there was an express or implied understanding that the secrecy of the matter would be respected; and (4) the secret information was improperly used or disclosed to the injury of the plaintiff."[170]

DUTSA defines a trade secret as "information" that "[d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use," and that "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[171] Thus, "to qualify as a 'trade secret' information must both derive independent economic value from not being generally known or readily ascertainable and be subject to reasonable efforts to maintain its secrecy."[172]

The Complaint fails to state a claim for trade secret misappropriation. The claim fails at the outset, because MHS has not alleged the existence of a trade secret. As just noted, information does not constitute a trade secret unless it is "subject to reasonable efforts to maintain its secrecy."[173] The sole allegation in the Complaint on this score is that "ECM made efforts to maintain the secrecy of the [i]nformation,

---

[170] *Elenza, Inc. v. Alcon Labs. Holding Corp.*, 2018 WL 1387729, at *3 (Del. Mar. 20, 2018).
[171] 6 *Del. C.* § 2001(4).
[172] *Beard Research, Inc. v. Kates*, 8 A.3d 573, 589 (Del. Ch. 2010), *aff'd sub nom. ASDI, Inc. v. Beard Research, Inc.*, 11 A.3d 749 (Del. 2010).
[173] *Id.*

and these efforts were reasonable under the circumstances."[174]  It is true that I must accept "even vague allegations [as] 'well-pleaded' if they give the opposing party notice of the claim."[175]  But I need not "accept as true conclusory allegations 'without specific supporting factual allegations.'"[176]  Here, MHS has simply recited the bare legal conclusion that ECM took reasonable steps to maintain the secrecy of its confidential information, described vaguely as "potential returns" and "strategies" regarding the purloined assets of ECM.[177]  No facts are pled about ECM's efforts to maintain secrecy.  Absent such supporting detail, MHS's conclusory allegations need not be credited for purposes of a Rule 12(b)(6) motion.[178]  Because MHS has failed to allege facts supporting the existence of a trade secret, its misappropriation claim must be dismissed.

### 7. The Books-and-Records Demand

The Complaint includes a demand for books and records against ECM and Goggin.  Section 18-305 of the LLC Act gives members of a limited liability

---

[174] Compl. ¶ 199.

[175] *Savor, Inc.*, 812 A.2d at 896–97.

[176] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (quoting *In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 65–66 (Del. 1995)).

[177] Compl. ¶ 198.

[178] *See Addy v. Piedmonte*, 2009 WL 707641, at *6 (Del. Ch. Mar. 18, 2009) ("The standard of review under Rule 12(b)(6) does not compel the court to accept all legal conclusions and strained interpretations of fact offered by the nonmoving party."); *cf. Savor, Inc.*, 812 A.2d at 897 (upholding a claim for trade secret misappropriation where the plaintiff "described the program to [the defendant] after receiving an assurance that [one of the defendant's employees] would respect the confidentiality of the information").

company the right to "'demand for any purpose reasonably related to the member's interest as a member' certain of the limited liability company's books and records, subject to requirements that a member's demand for such information must be in writing and must state the purposes for which the information is sought."[179]  As the Defendants point out, however, "the general rule [is] that books and records claims should be litigated in distinct proceedings."[180]   Moreover, MHS's counsel represented at oral argument that, if any of the counts in the Complaint survived the Motions to Dismiss, ordinary civil discovery would be sufficient to its purpose.[181]  I have already held that the Complaint states a claim for breach of contract.  Thus, I will dismiss the books-and-records count without prejudice.[182]

\* \* \*

To summarize, I have dismissed MHS's claims for breach of fiduciary duty, aiding and abetting (and conspiracy to commit) breach of fiduciary duty, fraud, aiding and abetting (and conspiracy to commit) fraud, breach of the implied covenant, unjust enrichment, and misappropriation of trade secrets.  I have also

---

[179] *DFG Wine Co., LLC v. Eight Estates Wine Holdings, LLC*, 2011 WL 4056371, at \*4 (Del. Ch. Aug. 31, 2011) (footnote omitted) (quoting 6 *Del. C.* § 18-305(a), (e)).

[180] *TravelCenters of Am., LLC v. Brog*, 2008 WL 868107, at \*1 (Del. Ch. Mar. 31, 2008).

[181] Mar. 5, 2018 Draft Oral Arg. Tr. 85:2–7: ("MR. ANGELILLO: As far as dismissal without prejudice, if – I would just extend that – if, in fact, this case survives in any of the causes of action, then I would think that the discovery in the case would be sufficient.").

[182] *See Brog*, 2008 WL 868107, at \*1–2 (dismissing a books-and-records counterclaim without prejudice where the plaintiff's complaint additionally sought to invalidate an action taken by a limited liability company for failure to comply with an advance notice bylaw).

dismissed the books-and-record count without prejudice. MHS's claim for breach of contract survives, however, because (i) it states a claim for relief under the operating agreement, (ii) I do not find as a matter of law that no equitable or legal relief is available, and (iii) MHS is not judicially estopped from seeking equitable relief. I turn now to what (if anything) remains of the Complaint with respect to Defendants Goodwin and Collins.

*B. Goodwin*

The Complaint asserts the following claims against Goodwin: aiding and abetting (and conspiracy to commit) breach of fiduciary duty and fraud, tortious interference with contract, and unjust enrichment. The aiding and abetting and conspiracy claims have already been dismissed. I have also dismissed the unjust enrichment claim. That leaves the claim for tortious interference with contract. The problem with that claim, however, is that Goodwin is a party to ECM's operating agreement,[183] and it is well established that a party to a contract cannot be liable for tortiously interfering with it.[184] Recognizing the deficiency of this claim, MHS asks me to "deem" it a claim for breach of the implied covenant of good faith and fair

---

[183] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss Ex. 1, at 21.

[184] *See, e.g.*, *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1058 (Del. 1984) ("Because Burlington was a party to the contract representing the first tender offer, the plaintiffs plainly have no cause of action against Burlington for tortious interference with that contract."); *see also Tenneco Auto., Inc. v. El Paso Corp.*, 2007 WL 92621, at *5 (Del. Ch. Jan. 8, 2007) ("Imposition of liability for tortious interference with contractual relationship requires that the defendant be a stranger to both the contract and the business relationship giving rise to and underpinning the contract." (internal quotation marks and citation omitted)).

dealing.[185]  Even if such a request were procedurally proper,[186] it would not help MHS, because I have already held that the Complaint fails to state a claim for breach of the implied covenant.  Moreover, the Complaint does not allege that Goodwin breached the operating agreement as written.[187]  Thus, the Complaint does not state any cognizable claim against Goodwin, and he must be dismissed from this action.

### C. Collins

The Complaint alleges the following claims against Collins: aiding and abetting (and conspiracy to commit) breach of fiduciary duty and fraud, tortious interference with contract, unjust enrichment, and misappropriation of trade secrets. Collins has moved to dismiss all of these claims, in addition to arguing that this Court lacks personal jurisdiction over him.  Yet in its brief opposing Collins's Motion to Dismiss, MHS defends only its claim for misappropriation.[188]  MHS's discussion of its other claims against Collins is limited to the bare assertion that "the allegations in the Complaint support each and every claim MHS asserted."[189]  MHS has thus abandoned every claim against Collins except the one for misappropriation.[190]  As discussed above, however, the misappropriation claim is

---

[185] Pl.'s Answering Brief in Opp'n to Goggin & Goodwin's Mot. to Dismiss 50–51.

[186] *See* Ct. Ch. R. 15(aaa).

[187] Compl. ¶¶ 158–66.

[188] Pl.'s Answering Brief in Opp'n to Collins' Mot. to Dismiss 2–3, 28–33.

[189] *Id.* at 3.

[190] *See, e.g.*, *Emerald Partners v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."); *Capano v. Capano*, 2014 WL 2964071, at *16 (Del. Ch. June 30, 2014) ("Defendants argue that the Court lacks jurisdiction to grant Joseph punitive damages and that

deficient and must be dismissed. Accordingly, the Complaint fails to state any claim against Collins, and he must be dismissed from the litigation.[191]

*D. Res Judicata*

As a fallback, the Defendants argue that all of MHS's claims are barred by res judicata. Specifically, the Defendants point out that MHS's counsel participated in the bankruptcy proceedings that gave rise to this litigation,[192] yet failed to object to the self-dealing conduct described in the Complaint. Thus, according to the Defendants, the sale orders that transferred the LR assets to ECM II and Ember were

---

some of Joseph's claims are derivative claims which he cannot assert after the Merger. Joseph did not respond to these arguments in his answering briefs or at oral argument and thus he has abandoned those claims."); *In re Novell, Inc. S'holder Litig.*, 2013 WL 322560, at *6 n.91 (Del. Ch. Jan. 3, 2013) ("The Plaintiffs did not address their claim under 8 *Del. C.* § 251(b) in their Omnibus Answering Brief in Opposition to Defendants' Motions to Dismiss the Second Amended Verified Consolidated Class Action Complaint . . . , despite being challenged by the Brief in Support of Novell Defendants' Motion to Dismiss. . . . That claim, thus, has been abandoned.").

[191] "As a general rule, jurisdictional matters should be decided before substantive matters." *Solomon v. Pathe Commc'ns Corp.*, 672 A.2d 35, 40 (Del. 1996). But the Delaware Supreme Court has recognized an exception to this rule where, as here, all defendants have moved to dismiss on Rule 12(b)(6) grounds and only one has sought dismissal on Rule 12(b)(2) grounds. *Id.* Because I have independently determined that the sole claim against Collins must be dismissed, it would make little sense to engage in a Rule 12(b)(2) analysis. In any case, MHS rests its personal jurisdiction assertion against Collins on the "conspiracy theory" of jurisdiction, which requires the plaintiff to plead an unlawful act and a conspiracy to commit that unlawful act. *See Boulden v. Albiorix, Inc.*, 2013 WL 396254, at *9 (Del. Ch. Jan. 31, 2013) ("Because Boulden has failed to state a claim for fraud, and because the conspiracy to commit fraud claim must be predicated on an underlying wrong, Boulden's conspiracy to commit fraud claim must also fail. . . . Thus, the first prong of the [conspiracy theory] test—that a conspiracy existed—is not satisfied."). The only surviving claim is one for breach of contract against Goggin. But breach of contract cannot serve as a predicate for a conspiracy. *E.g.*, *OptimisCorp v. Waite*, 2015 WL 5147038, at *56 (Del. Ch. Aug. 26, 2015), *aff'd*, 137 A.3d 970 (Del. 2016). Thus, there is no underlying wrong that could form the basis of a conspiracy, and MHS's attempt to premise personal jurisdiction over Collins on the conspiracy theory fails.

[192] *E.g.*, Collins Aff. Ex. F.

42

final decisions on the merits that should be given preclusive effect. Res judicata, however, does not bar MHS's breach of contract claim, at least at this stage of the litigation.

Res judicata prevents a party from "bringing a second suit based on the same cause of action after a judgment has been entered in a prior suit involving the same parties."[193] "Res judicata exists to provide a definite end to litigation, prevent vexatious litigation, and promote judicial economy."[194] I apply a five-part test in determining whether res judicata applies:

> (1) the court making the prior adjudication had jurisdiction, (2) the parties in the present action are either the same parties or in privity with the parties from the prior adjudication, (3) the cause of action must be the same in both cases or the issues decided in the prior action must be the same as those raised in the present case, (4) the issues in the prior action must be decided adversely to the plaintiff's contentions in the instant case, and (5) the prior adjudication must be final.[195]

"Res judicata encompasses 'all claims that were litigated or which could have been litigated in the earlier proceeding.'"[196] "For res judicata to bar an unasserted claim, the underlying facts must have been known or capable of being known at the time of the first action."[197]

---

[193] *Betts v. Townsends, Inc.,* 765 A.2d 531, 534 (Del. 2000).

[194] *LaPoint v. AmerisourceBergen Corp.*, 970 A.2d 185, 191 (Del. 2009) (footnotes omitted).

[195] *Bailey v. City of Wilmington*, 766 A.2d 477, 481 (Del. 2001).

[196] *Aveta Inc. v. Bengoa*, 986 A.2d 1166, 1185 (Del. Ch. 2009) (emphasis omitted) (quoting *Hendry v. Hendry*, 2006 WL 1565254, at *8 (Del. Ch. May 26, 2006)).

[197] *Id.* (citing *LaPoint*, 970 A.2d at 193–94); *accord RBC Capital Mkts., LLC v. Educ. Loan Trust IV*, 87 A.3d 632, 646 (Del. 2015) ("The *res judicata* doctrine operates to bar only later claims that could have been brought at the time of an earlier asserted claim.").

Res judicata is an affirmative defense.[198]   Affirmative defenses "are not ordinarily well-suited for treatment on . . . a motion [to dismiss]."[199]  Thus, "[u]nless it is clear from the face of the complaint that an affirmative defense exists and that the plaintiff can prove no set of facts to avoid it, dismissal of the complaint based upon an affirmative defense is inappropriate."[200]

Even assuming that the sale orders entered by the Bankruptcy Court were final decisions on the merits entitled to preclusive effect,[201] the Defendants have failed to establish that res judicata applies at this stage of the litigation.  Res judicata cannot preclude an unasserted claim where the plaintiff either did not know or could not have known the underlying facts at the time of the first action.  Based on the Complaint and other materials I may consider on a motion to dismiss, I cannot determine whether MHS knew or could have known of Goggin's scheme at the time of the sale orders.  The Complaint alleges that Goggin continually kept MHS in the dark about ECM prior to the entry of the sale orders.  For example, a few weeks

---

[198] Ct. Ch. R. 8(c); *see also In re Nat'l Auto Credit, Inc. S'holders Litig.*, 2004 WL 1859825, at *1 n.1 (Del. Ch. Aug. 3, 2004) (describing res judicata as an affirmative defense).

[199] *Reid v. Spazio*, 970 A.2d 176, 183 (Del. 2009).

[200] *Id.* at 183–84.

[201] Several federal circuit courts have held that a bankruptcy court sale order is a final decision on the merits for res judicata purposes.  *See, e.g.*, *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) ("We join other circuits in holding that a bankruptcy court's sale order is a final order for res judicata purposes, not only because it is in line with our holdings that an order confirming a reorganization is a final order, but also because it is in line with the policy behind res judicata.").  The parties have not cited a decision from this state that addresses this precise issue, and I do not decide the question here.

before the orders were issued, MHS's lawyer sent a letter to ECM's counsel requesting information about the credit bids. About a week later, ECM's counsel wrote back to deny the request. Later, on April 9, 2015—the day before the first sale order was entered—Goggin sent out a "Consent Package" seeking a vote on ECM's exercise of its credit-bid rights. Notably, he did not ask for approval of the Ember transaction, and he did not include financial information relevant to assessing any proposed transactions. Given Goggin's alleged efforts to conceal his wrongdoing, I cannot rule as a matter of law that MHS was in a position to raise claims attacking Goggin's self-dealing conduct at the time of the Bankruptcy Court proceedings.[202]

Goggin may be able to show that res judicata applies on a more fully developed record. As it stands, however, res judicata does not bar MHS's breach of contract claim.[203]

---

[202] MHS's counsel represented at oral argument that his client did not discover Goggin's wrongdoing until after the sale orders were entered. Mar. 5, 2018 Draft Oral Arg. Tr. 71:23–72:2. This representation is consistent with the pleadings referred to above.

[203] The Defendants also ask me to rule that any surviving claim is derivative rather than direct. I need not decide this question, however. The Defendants have not argued that demand would not be futile as to Goggin. Mar. 5, 2018 Draft. Oral Arg. Tr. 44:18–21 ("THE COURT: But you are not arguing that demand would not be futile? MS. KOCH: We have not made a demand futility argument, Your Honor."). Thus, even if I held that MHS's breach of contract claim were derivative, demand would be excused and the claim would proceed. *See Needham v. Cruver*, 1993 WL 179336, at \*3 (Del. Ch. May 12, 1993) ("This Court need not decide at this point whether plaintiffs' claims . . . are individual or stockholder derivative claims because, even if the claims are derivative claims, a pre-suit demand should be excused."); *Chrysogelos v. London*, 1992 WL 58516, at \*7 n.8 (Del. Ch. Mar. 25, 1992) ("I need not decide the character of th[e] claim, because even if it is derivative, demand is excused.").

## III. CONCLUSION

For the foregoing reasons, the Defendants' Motions to Dismiss are granted in part and denied in part. The parties should submit an appropriate form of order.